**Affirm in part; Reverse in part; and Remand; Opinion Filed August 7, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01306-CV

**SEVEN HILLS COMMERCIAL, LLC, CATENARY GROUP, LLC, POST REAL ESTATE GROUP, INC., POST INVESTMENT GROUP, LLC, AND JASON POST,**
**Appellants**
**V.**
**MIRABAL CUSTOM HOMES, INC., FST GROUP, LLC, D&G INVESTMENT GROUP, LLC, JASON MIRABAL, AND GARY GUION, Appellees**

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-1206312D**

## OPINION

Before Justices Moseley, Lang, and Brown
Opinion by Justice Moseley

In this consolidated, interlocutory appeal, we examine whether the trial court erred by denying appellants' motions to compel arbitration. Appellant Seven Hills Commercial, LLC (Seven Hills) appeals from three orders issued by the trial court in which the trial court refused to compel arbitration and stay the case pending in the trial court. Appellants Catenary Group, LLC (Catenary), Post Real Estate Group, Inc. (PREG), Post Investment Group, LLC (Post-Investment), and Jason Post, collectively "Catenary Appellants," appeal from the trial court's order denying their motions to compel arbitration.[1]

---

[1] Although the Catenary Appellants' notice of appeal states that they are appealing from two orders of the trial court, one order denying their motion and supplemental motion to compel arbitration and a second order denying their objections to the affidavits of appellees Gary Guion and Jason Mirabal, they do not raise an issue in their brief related to the affidavits. We limit our review to the arbitration issues raise in their brief. *See* TEX. R. APP. P. 38.1(f).

This dispute centers on the applicability and enforceability of an arbitration provision contained in the operating agreement of Seven Hills. That provision states: "Any dispute, claim or controversy arising out of or relating to this Agreement or breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration . . ." The parties disagree about which parties to the lawsuit (if any) are bound by the arbitration provision, whether the claims asserted in the lawsuit fall within the provision's parameters, and who can enforce the arbitration provision. Appellants believe the arbitration provision is broad and that every person and entity who signed the agreement consented to the arbitration provision. Appellees argue that only a few of the parties are required to arbitrate and that the claims in this lawsuit fall outside the bounds of the arbitration clause.

We agree that the arbitration provision is broad, and most of the parties in this lawsuit are subject to its terms. However, with one exception, we do not reach the issue of whether parties must arbitrate their underlying disputes. Rather, because the arbitration provision states that "the determination of the scope or applicability of this Agreement to arbitrate" will be determined by arbitration, we only conclude that the arbitrator has the primary responsibility to decide whether the parties to the dispute are bound by the arbitration provision.

We conclude the trial court erred by failing to compel appellants Seven Hills, Catenary, PREG, and Mr. Post, and appellees Mirabal Custom Homes, Inc. (MCHI) and Jason Mirabal to arbitration and we reverse the trial court's orders relating to the claims between these parties. We conclude the trial court did not err by refusing to compel arbitration of the claims by appellees Gary Guion and D&G Investment Group, LLC (D&G) against PREG, Post-Investment, and Mr. Post and we affirm the trial court's order relating to these claims. We do not determine whether the trial court erred when it refused to compel Seven Hills to arbitrate its

claims against Leon Halperin.[2]  We remand this case for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

In November 2009, PREG, MCHI, and D&G executed the original Operating Agreement of Seven Hills Commercial, LLC (Original Agreement), thereby forming Seven Hills.  Effective January 1, 2010, PREG transferred its membership to Post-Investment, which subsequently transferred its membership to Catenary.  Similarly, in March 2011, D&G transferred its interest to appellee FST Group, LLC (FST).  Some of the parties then executed the First Amended and Restated Operating Agreement of Seven Hills Commercial LLC (Operating Agreement), which became effective on March 15, 2011.  This is the agreement at issue here.

Because of the nature of the parties' arguments, we address in some detail the execution of the Operating Agreement and the identity of the signatories.  The Operating Agreement is signed by Catenary, PREG, MCHI, FST, and D&G.  None of the individual litigants involved in this appeal signed the Operating Agreement in his individual capacity.[3]  Appellant Mr. Post executed the agreement twice: once in his capacity as Manager of Catenary and a second time as President of PREG.  Appellee Mr. Mirabal signed the Operating Agreement in his capacity as President of MCHI.  Appellee Mr. Guion also signed the agreement twice: once as Manager of FST and once as President of D&G.

The Operating Agreement states it is "by and among" Catenary, PREG, MCHI, FST, and D&G.  However, the Operating Agreement lists as "Members" only three entities: Catenary, MCHI, and FST.  The agreement identifies PREG as the "Former Manager" and D&G as a

---

[2] Seven Hills sued Mr. Halperin.  Seven Hills's motion to compel arbitration included discussion about Seven Hills's claims against Mr. Halperin.  Although the trial court denied Seven Hills's motions to compel arbitration–and Seven Hills appeals the trial court's orders denying its motions to compel arbitration–Seven Hills's brief does not argue that the trial court erred by failing to compel its claims against Mr. Halperin to arbitration.  Mr. Halperin did not file a brief on appeal.  Because Seven Hills failed to argue that the trial court erred by not compelling its claims against Mr. Halperin to arbitration, we do not address that issue.  *See* TEX. R. APP. P. 38.1.

[3] Mr. Halperin, an individual litigant below who is not involved in this appeal, did not sign the Operating Agreement at all.

–3–

"Former Member." When the Operating Agreement was executed, MCHI was named as Manager of Seven Hills. MCHI was removed as the Manager after this lawsuit began.

### A. Lawsuit

On October 17, 2012, Seven Hills sued Catenary, Mr. Post, MCHI, FST, and Mr. Halperin. Seven Hills alleged Catenary, acting through Mr. Post and Mr. Halperin, obtained "instruments"[4] payable to Seven Hills and deposited them into an unauthorized bank account over which MCHI (then the Manager of Seven Hills) did not have access or control. Seven Hills also sued Catenary for breach of the Operating Agreement, breach of fiduciary duty, and breach of the duties of good faith and fair dealing. Seven Hills sued Mr. Post and Mr. Halperin for participating in Catenary's breaches of duties and tortious interference with the Operating Agreement.[5]

In the same lawsuit, MCHI sued Catenary, PREG, and Mr. Post for money had and received. It alleged that while MCHI was the Manager of Seven Hills (from November 2, 2009, until March 14, 2011), Catenary, PREG, and Mr. Post improperly caused distributions to be made from Seven Hills to their own account.

Additionally, D&G and Mr. Guion sued Mr. Post and his entities, PREG and Post-Investment, for breach of contract and quantum meruit. They allege Mr. Guion worked for Mr. Post. In exchange, Mr. Post and his entities agreed to pay Mr. Guion, "or his designee D&G," a "promote interest" in real estate projects. During Mr. Guion's tenure with Mr. Post and his entities, the parties acquired eleven real estate projects, all of which have been sold. Mr. Guion alleges he, or his designee D&G, has not been paid the full amount of his "promote" interest in

---

[4] As an example, Seven Hills alleged "Catenary has deposited the proceeds of at least two construction draws into the unauthorized bank account."

[5] In the original petition, Seven Hills also sought a declaratory judgment that MCHI was the sole Manager of Seven Hills and, as Manager, had specific, exclusive authorities over Seven Hills. Because MCHI was removed and replaced as Manager, this claim is moot and we do not address the arbitrability of it.

those projects. Mr. Guion also sued Mr. Post for intrusion upon seclusion and intentional infliction of emotional distress, and sought a permanent injunction, alleging Mr. Post used internet search optimization to promote negative stories about Mr. Guion in order to harm Mr. Guion and cause him ridicule and embarrassment.

Finally, MCHI, Mr. Mirabal, FST, D&G, and Mr. Guion asserted a cause of action against Seven Hills and Mr. Post that states they "adopt and incorporate as though set forth fully herein their First Amended Application to Stay and Dismiss Arbitration." Appellees represented to the Court that this is the only claim pending against Seven Hills.

On April 26, 2013, the trial court called the case to trial. Although MCHI, Mr. Mirabal, FST, D&G, and Mr. Guion appeared, Seven Hills and the Catenary Appellants failed to do so. After conducting a trial, the trial court entered a final judgment dismissing the claims for want of prosecution, and awarding damages against Seven Hills and the Catenary Appellants. The trial court subsequently granted motions for new trial.

## B. Dispute Resolution Provisions

The lengthy dispute resolution provision in the Operating Agreement is at the center of the dispute before us. Because the parties' arguments involve each portion of the dispute resolution provision, we quote the provision nearly in its entirety:

9.4 **Disputes**.

(a) **Good Faith Negotiations**. The Members will attempt in good faith to resolve through negotiation any dispute, claim or controversy arising out of or relating to this Agreement. Any Member may initiate negotiations by providing written notice to the other Members, setting forth the subject of the dispute. The recipient of such notice will respond in writing within ten (10) days with a statement of its position on and recommended solution to the dispute. If the dispute is not resolved by this exchange of correspondence, then representatives of each party with full settlement authority will meet at a mutually agreeable time and place within thirty (30) days of the date of the initial notice in order to exchange relevant information and perspectives, and to attempt to resolve the dispute. If the dispute is not resolved by these negotiations, the matter will be submitted to JAMS, or its successor, for mediation.

(b) **Mediation**. The Members agree that any and all disputes, claims or controversies arising out of or relating to this Agreement shall be submitted to JAMS, or its successor, for mediation, and if the matter is not resolved through mediation, then it shall be submitted to JAMS, or its successor, for final and binding arbitration. Any Member may commence mediation by providing to JAMS and the other Members a written request for mediation, setting forth the subject of the dispute and the relief requested. . . . The Members covenant that they will participate in the mediation in good faith, and that fees and costs associated with the mediation will be split equally by each Member. . . . Any Member may initiate arbitration with respect to the matters submitted to mediation . . . The provisions of this Section 9.4(b) may be enforced by any court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys [sic] fees, to be paid by the party against whom enforcement is ordered.

(c) **Arbitration Procedure**. Any dispute, claim or controversy arising out of or relating to this Agreement or breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration in Los Angeles, California, before a sole arbitrator, in accordance with the laws of the State of California for agreements made in and to be performed in that State. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction. Subject to Section 9.7, the arbitrator will be authorized to apportion its fees and expenses and the reasonable attorney's fees and expenses of the parties, as the arbitrator deems appropriate. In the absence of any such apportionment, the fees and expense of the arbitrator will be split equally by each Member. The Members agree that this clause has been included to rapidly and inexpensively resolve any disputes between them with respect to this Agreement, and that this clause shall be grounds for dismissal of any court action commenced by with respect to this Agreement, other than post-arbitration actions seeking to enforce an arbitration award and actions seeking equitable, injunctive or other similar relief.

As previously discussed, the parties dispute whether the Operating Agreement binds all the parties to this lawsuit, whether the claims asserted fall within the provision's parameters, and who can enforce the arbitration provision. Appellants argue the arbitration provision is broad; all parties to the lawsuit consented to the arbitration provision (Catenary, PREG, MCHI, FST, and D&G are parties to the Operating Agreement; Mr. Post, Mr. Mirabal, and Mr. Guion are agents of parties to the agreement; and Post-Investment is a third party beneficiary); and the arbitration provision covers all claims asserted in this suit. Appellees argue that only the Members are

bound by the arbitration agreement and the claims fall outside the bounds of the arbitration provision.

### C. Motions Regarding Arbitration

On October 30, 2012, Seven Hills, Catenary, and Mr. Post filed a demand for arbitration with JAMS, citing section 9.4(c) of the Operating Agreement. The demand listed the respondents as MCHI, Mr. Mirabal, FST, D&G, and Mr. Guion. In response, the respondents filed an application to stay the arbitration in the trial court.

Seven Hills, Catenary, PREG, Post-Investment, and Mr. Post then filed several motions attempting to compel arbitration. MCHI, Mr. Mirabal, FST, D&G, and Mr. Guion opposed the motions. In several orders, the trial court denied the motions to compel arbitration. These orders form the basis for this appeal.

## LAW

### A. Compelling Arbitration

When examining arguments such as the ones presented in this appeal, a threshold matter we first consider is who has the primary power to decide whether appellants can compel appellees to arbitrate the claims: a court or an arbitrator. *See Roe v. Ladymon*, 318 S.W.3d 502, 511 (Tex. App.—Dallas 2010, no pet.).

Arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at 510 (quoting *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 648 (1986)). Arbitration is "a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Id.* at 512 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

A party seeking to compel arbitration must establish that a valid arbitration agreement exists and that the claims asserted are within the scope of the agreement. *See In re D. Wilson*

*Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). If these two showings are made, the burden shifts to the party opposing arbitration to present a valid defense to the agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). In the absence of evidence of a valid defense, the trial court has no discretion—it must compel arbitration and stay its own proceedings. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002) (orig. proceeding).

Disputes about the scope of an arbitration agreement are resolved in favor of arbitration. *Ladymon*, 318 S.W.3d at 510-11. However, this presumption favoring arbitration "arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *Id.* at 511 (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005)).

### B.  Non-Signatories

"Whether a non-signatory can compel arbitration pursuant to an arbitration clause questions the existence of a valid arbitration clause between specific parties and is therefore a gateway matter for the court to decide." *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding). Generally a party must sign an arbitration agreement to be bound by it. *Id.* However, an obligation to arbitrate may also attach to a non-signatory under the principles of contract and agency law. *Id.* "Although '[a]rbitration agreements apply to nonsignatories only in rare circumstances[,]' the question of '[w]ho is actually bound by an arbitration agreement is [ultimately] a function of the intent of the parties, as expressed in the terms of the agreement.'" *Id.* (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355, 358 (5th Cir. 2003)).

### C.  Arbitrability

The question of who has the primary authority to decide whether appellees are required to arbitrate turns upon the agreement of the parties. *See Ladymon*, 318 S.W.3d at 512. When deciding whether parties agreed to arbitrate a certain matter, courts ordinarily apply state-law

principles governing the formation of contracts. *Id.* at 512-13. Generally, whether the parties agreed to arbitrate is an issue decided by the courts rather than an arbitrator. *Id.* Courts should not assume that parties agreed to arbitrate arbitrability unless there is "clear and unmistakable evidence that they did so." *Id.* at 513 (quoting *First Options*, 514 U.S. at 944); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (question of arbitrability is issue for judicial determination unless parties clearly and unmistakably provide otherwise); *n re Labatt Food Servs., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding) (under the FAA, "[w]hether an arbitration agreement binds a non[-]signatory is a gateway matter to be determined by courts rather than arbitrators unless the parties clearly and unmistakably provide otherwise."); *Saxa Inc. v. DFD Architecture, Inc.*, 312 S.W.3d 224, 229 (Tex. App.—Dallas 2010, pet. denied) ("court must examine the arbitration agreement to decide if, when construed under the relevant state law, the agreement evidences a clear and unmistakable intention that the arbitrators will have the authority to determine the scope of arbitration."). When looking for clear and unmistakable evidence that the parties agreed to arbitrate the issue of arbitrability, we look for an agreement by the parties to the dispute, not an agreement by the parties to the contract containing the arbitration clause. *Ladymon*, 318 S.W.3d at 514 (discussing *First Options*, 514 U.S. at 943-47).

## ANALYSIS

### A. MCHI's Claim Against Catenary, PREG, and Mr. Post

MCHI sued Catenary, PREG, and Mr. Post for money had and received. MCHI alleges:

> From November 2, 2009, to March 14, 2011, the sole member of Seven Hills was MCHI. MCHI owned and was entitled to all distributions and profits of Seven Hills during this period of time. Notwithstanding, Catenary, Post, and PREG caused distributions to be made from Seven Hills to or for their own account. MCHI seeks recovery of all amounts paid to or on behalf of Catenary, Post, and/or PREG during or allocable to the period from November 2, 2009, to March 14, 2011.

Catenary, PREG, and Mr. Post seek to compel arbitration, but MCHI resists.

The Operating Agreement became effective on March 15, 2011. MCHI asserts that because the acts about which it complains occurred during a period of time immediately before the Operating Agreement became effective, its claim cannot arise out of or be related to the Operating Agreement. However, the Original Agreement, which became effective in November 2009, also contained an arbitration provision that is the same as the provision in the Operating Agreement. MCHI does not explain why its claims cannot arise out of or be related to the Original Agreement—which was in effect during the time period that the alleged events occurred.

MCHI signed both the Original Agreement and the Operating Agreement as a Member of Seven Hills. Both agreements contain the same provision relating to arbitration. MCHI agreed to arbitrate any "dispute, claim or controversy arising out of *or relating to* this Agreement or breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate." (emphasis added). The arbitration agreement is clear: MCHI agreed to delegate arbitrability to the arbitrator. *See Saxa*, *Inc*., 312 S.W.3d at 230; *Ladymon*, 318 S.W.3d at 513-14. We recognize that MCHI may not have to arbitrate the substance of its dispute with Catenary, PREG, and Mr. Post; however, MCHI must submit the issue of arbitrability to the arbitrator.

Catenary is a Member of Seven Hills. PREG and Mr. Post are not. However, Catenary, as a Member, and PREG, as the former manager, both signed the Operating Agreement. As signatories to the Operating Agreement, Catenary and PREG also agreed to delegate arbitrability to the arbitrator and, therefore can compel MCHI's claim against them to arbitration.

The issue remains as to whether Mr. Post can compel MCHI's claim to arbitration. Mr. Post executed the Operating Agreement in his capacity as Manager of Catenary. He also

executed the Original Agreement as President of PREG. The Catenary Appellants argue that Mr. Post can enforce the arbitration agreement because he is an agent of a party to the agreement. With respect to the claim by MCHI, we agree.

An examination of MCHI's claim shows it is suing Mr. Post and others for taking money it believes belongs to Seven Hills. As the Texas Supreme Court has noted, "[c]orporations can act only through human agents." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 188 (Tex. 2007) (orig. proceeding). Here, Catenary and PREG could not have acted as MCHI alleges they did on their own. Mr. Post, the human agent, is alleged to have been the person who committed the alleged offenses. Additionally, by agreeing to arbitrate all disputes "arising out of or relating to" the Operating Agreement (or the Original Agreement), the parties generally intend to include actions of their agents such as Mr. Post because actions of corporate agents on behalf of the entity are generally deemed to be the corporation's acts. *See id.* at 188-89.

We conclude the trial court erred by denying the Catenary Appellants' motion to compel arbitration of MCHI's claim against Catenary, PREG, and Mr. Post for money had and received. The arbitrator will make the primary determination of whether MCHI's claim against Catenary, PREG, and Mr. Post falls within the scope of the arbitration agreement. We sustain the Catenary Appellants' first and second issues to this extent.

### B.    D&G's and Mr. Guion's Claims

Mr. Guion and his entity D&G sued PREG, Post-Investment, and Mr. Post for breach of contract and quantum meruit. Mr. Guion alleges he worked for Mr. Post and his entities in exchange for a "promote interest" in real estate projects. The "promote interest" was to be paid to Mr. Guion or his designee D&G. During his tenure with Mr. Post and his entities, the parties allegedly acquired eleven real estate projects, all of which have been sold. Mr. Guion alleges he (or his designee D&G) has not been paid the full amount of the "promote interest" in those

–11–

projects and he seeks recovery. Mr. Guion and D&G couch this claim as a breach of an employment agreement.

Mr. Guion also sued Mr. Post for intrusion of seclusion and intentional infliction of emotional distress, and sought a permanent injunction. Mr. Guion alleges that Mr. Post employed internet search optimization to promote negative stories about Mr. Guion in order to harm Mr. Guion and cause him ridicule and embarrassment.

Although PREG, Post-Investment, and Mr. Post seek to compel these two claims to arbitration, D&G and Mr. Guion resist. The Catenary Appellants make several arguments about why these claims should be arbitrated: the money allegedly owed to Mr. Guion is for projects related to Seven Hills and, therefore, the claims relate to Seven Hills; Mr. Guion's relationship with the Catenary Appellants is related to the formation of Seven Hills and the two operating agreements; and all parties to the claims are parties to the Operating Agreement, are agents of parties to the agreement, or are third-party beneficiaries of the Agreement. Therefore, they argue, the claims belong in arbitration. D&G and Mr. Guion argue the claims are outside the scope of the Operating Agreement and do not relate to the Operating Agreement.

### 1. Arbitrability

Although PREG and D&G executed the Operating Agreement, they are the only parties to these claims who did so. Mr. Post's and Mr. Guion's signatures appear on the signature pages of the Operating Agreement; however, they only signed the Operating Agreement as representatives for their respective entities. The agreement clearly indicated they were signing on behalf of their entities and not on their own behalf. Therefore, their signatures do not render them personally parties to the agreement. *See Ladymon*, 318 S.W.3d at 515. Post-Investment did not execute the Operating Agreement.

Mr. Guion is the only party asserting claims for intrusion of seclusion and intentional infliction of emotional distress. These claims appear to be made in his personal capacity and relate to an alleged injury to him personally; he asserts the alleged acts were intended to cause ridicule and embarrassment to him. Likewise, the agreement between Mr. Guion and PREG, Post-Investment, and Mr. Post appears to be separate and apart from the Operating Agreement. Mr. Guion filed an affidavit stating his claims against PREG, Post-Investment, and Mr. Post are not related to the Operating Agreement. Based on this record, we conclude there is no evidence that D&G and Mr. Guion clearly and unmistakably agreed an arbitrator could decide whether they were bound to arbitrate these claims; therefore, arbitrability is primarily a question for the court. *See id.* at 512-13.

### 2. Compelling Claims to Arbitration

As the parties seeking to compel the claims to arbitration, PREG, Post-Investment, and Mr. Post bore the burden to establish a valid arbitration agreement exists and the claims are within the scope of the agreement. *See In re D. Wilson Constr. Co.*, 196 S.W.3d at 781. Although the arbitration provision in the Operating Agreement is broad and applies to "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or breach, termination, enforcement, interpretation or validity thereof," D&G's and Mr. Guion's claims do not fall within those broad parameters. These claims do not arise out of or relate to the Operating Agreement. Rather, their claims for breach of contract and quantum meruit appear to relate to a separate agreement between Mr. Guion and PREG, Post-Investment, and/or Mr. Post.

While acknowledging there was a separate agreement, PREG, Post-Investment, and Mr. Post argue that these claims "relate to" the Operating Agreement and should be sent to arbitration. In support of their argument, they cite an exhibit in the record that is an email from Mr. Guion to Mr. Post. The subject line states "Final Offer Letter – For File," and it contains an

attachment titled "Gary Guion Offer Letter 11.02.09 – Final.doc." The attached offer letter is a redline letter with the stationary heading for PREG. The letter is addressed to Mr. Guion and includes the subject line "Offer of Employment." The letter states: "On behalf of Post Real Estate Investment Group, Inc. (D/B/A Post Investment Group), it gives me great pleasure to hereby offer you the position of Director of Post Investment Group, reporting to the President, Jason Post." It does not indicate that Mr. Guion would be hired to work for Seven Hills or work on projects related to Seven Hills. The letter shows Mr. Guion would work for Post-Investment and report to Mr. Post.

Based on the pleading and the Gary Guion Offer Letter, it does not appear that the breach of contract claim initiated by D&G and Mr. Guion in any way arises out of or relates to the Operating Agreement. Rather, it appears to be based on a separate relationship between Mr. Guion, Mr. Post, and their related entities. There is no separate arbitration agreement between these parties that would govern this dispute. Because PREG, Post-Investment, and Mr. Post failed to establish the existence of a valid and enforceable arbitration agreement between themselves and Mr. Guion, the trial court did not abuse its discretion by denying their motion to compel arbitration on D&G and Mr. Guion's claims for breach of contract and quantum meruit.

Mr. Guion also sued Mr. Post for intrusion upon seclusion and intentional infliction of emotional distress, and sought a permanent injunction, alleging Mr. Post used internet search optimization to promote negative stories about Mr. Guion in order to harm Mr. Guion and cause him ridicule and embarrassment. Again, we cannot connect these claims by Mr. Guion to either Seven Hills or the Operating Agreement. Thus, because Mr. Post failed to establish the existence of a valid and enforceable arbitration agreement between himself and Mr. Guion, we conclude the trial court did not abuse its discretion by denying his motion to compel arbitration on Mr.

Guion's claims for intrusion upon seclusion, intentional infliction of emotional distress, and request for a permanent injunction.

We overrule the Catenary Appellants' first and second issues to this extent.

### C.    Claims by Seven Hills

Seven Hills sued Catenary for breach of the Operating Agreement and breach of fiduciary duty and duty of good faith and fair dealing.  Seven Hills also sued Mr. Post and Mr. Halperin for participating in Catenary's breaches of duties and tortious interference with the Operating Agreement.[6]  Seven Hills, Catenary, and Mr. Post seek to compel arbitration.  The Operating Agreement defines Catenary as a Member, and, as a Member, Catenary signed the Operating Agreement.  However, Seven Hills did not sign the Operating Agreement; the Operating Agreement is the governing document for Seven Hills.  And, as discussed above, Mr. Post only signed the Operating Agreement on behalf of Catenary.

### 1.    Arbitrability

The first question we must address is whether there is clear and unmistakable evidence that Seven Hills, Catenary, and Mr. Post agreed the arbitrator could decide whether they are bound to arbitrate Seven Hills's claims.  By signing the Operating Agreement containing the arbitration provision, Catenary clearly and unmistakably agreed to allow the arbitrator to decide the scope or applicability of the agreement to arbitrate.  *See Ladymon*, 318 S.W.3d at 513-14.

An examination of Seven Hills's claim shows that Seven Hills is suing Mr. Post for participating in Catenary's breaches of fiduciary duty and duty of good faith and fair dealing, as well as tortious interference with the Operating Agreement.  During the non-jury trial on April 26, 2013, counsel for several appellees explained to the trial court that Mr. Post was acting on

---

[6] As previously noted, the arbitrability of the claims against Mr. Halperin are not challenged on appeal and, therefore, we do not discuss whether Mr. Halperin should be subject to the arbitration provision.

behalf of Catenary and PREG when he allegedly took the complained-of actions. When the allegations by Seven Hills against Catenary and Mr. Post are examined together, it is clear that the allegations against Mr. Post are in his capacity as an agent for Catenary—not in his individual capacity. *See generally In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d at 188 ("Corporations can act only through human agents"). Additionally, by agreeing to arbitrate all disputes "arising out of or relating to" the Operating Agreement, the parties generally intend to include actions of their agents such as Mr. Post because actions of corporate agents on behalf of the entity are generally deemed to be the corporation's acts. *See id.* at 188-89. We conclude Mr. Post clearly and unmistakably agreed to allow the arbitrator to decide the scope or applicability of the agreement to arbitrate the claims asserted by Seven Hills against him. *See Ladymon*, 318 S.W.3d at 513-14.

Finally, we must determine whether Seven Hills, as a non-signatory to the Operating Agreement, can compel its claims to arbitration. Appellees argue that Seven Hills is "not a party to the putative contract containing an arbitration clause, and no exceptions exist to allow [Seven Hills] to compel arbitration despite this deficiency." Seven Hills argues it signed the Operating Agreement through its manager, MCHI, and it is entitled to enforce the agreement. Because Seven Hills did not sign the Operating Agreement, we must decide whether the signors intended to grant the right to enforce the arbitration agreement to Seven Hills.

A similar issue recently was addressed in *Elkjer v. Scheef & Stone, L.L.P. See* 2014 WL 1255844 (N.D. TX Mar. 27, 2014). In that case, the plaintiff, a partner in a law firm, sued her firm. The firm sought to compel arbitration pursuant to an arbitration provision in the partnership agreement. The plaintiff argued that the partnership agreement was an agreement among the partners, not with the partnership. The plaintiff concluded there was no agreement to arbitrate between the law firm and herself and, therefore, the firm could not compel arbitration.

–16–

*Id.* at \*3-4. The law firm argued it could not have signed the partnership agreement because the firm did not exist until the agreement took effect. *Id.* at \*4.

The *Elkjer* court stated that the fact the partnership had not signed the partnership agreement was not "fatal" to the partnership's argument. Rather, the agreement "is a master agreement of sorts that created an ongoing relationship between the Partners but also between the Partners and the Partnership. The Partnership Agreement addresses much more than just [the plaintiff's] relationship with the other Partners. It governs the very existence and operation of the limited liability partnership that is Defendant . . ." *Id.* at \*4.

We also do not consider Seven Hills's failure to sign the Operating Agreement fatal to its attempt to compel arbitration. Like the partnership agreement in *Elkjer*, the Operating Agreement is the agreement that created an ongoing relationship between the signatories to the agreement and Seven Hills. The Operating Agreement governs the existence and operation of Seven Hills.

Further, section 101.052 of the Texas Business Organizations Code, which applies to limited liability companies, states: "Except as provided by Section 101.054, the company agreement of a limited liability company governs: (1) the relations among members, managers, and officers of the company, assignees of membership interests in the company, and the company itself." TEX. BUS. ORG. CODE. § 101.052(a)(1). We interpret the business organizations code to state that the company agreement governs the relationships between the company and its members. Here, that would be Seven Hills, Catenary, MCHI, and FST.

We do not believe Seven Hills was required to sign the Operating Agreement before it could enforce the arbitration provision. *See Elkjer*, 2014 WL 1255844 at \*4. Because the Operating Agreement is the master agreement of Seven Hills and the agreement contains the arbitration provision assigning arbitrability to an arbitrator, we conclude Seven Hills clearly and

unmistakably agreed to allow the arbitrator to decide the scope or applicability of the agreement to arbitrate. *See Ladymon*, 318 S.W.3d at 513-14.

Because Seven Hills, Catenary, and Mr. Post clearly and unmistakably agreed to allow the arbitrator to decide the scope or applicability of the agreement to arbitrate claims arising out of and related to the agreement, which Seven Hills's claims clearly are, we conclude the trial court erred by denying the motion to compel arbitration of these claims. We sustain Seven Hills's first issue and the Catenary Appellants' first and second issues to this extent.

### 2. Waiver

It is undisputed that this lawsuit began when Seven Hills filed its original petition on October 17, 2012, and that petition did not seek to compel arbitration. Seven Hills did not move to compel arbitration until August 5, 2013, nearly ten months later. In response to Seven Hills's attempts to compel arbitration, appellees argue Seven Hills waived its right to compel arbitration because it initiated the lawsuit and it joined the application to stay the California arbitration.

Waiver of contractual arbitration rights is a question of law that is decided by the court, not an arbitrator. *Perry Homes v. Cull*, 258 S.W.3d 580, 587 (Tex. 2008); *see also Small v. Specialty Contractors, Inc.*, 310 S.W.3d 639, 644 (Tex. App.—Dallas 2010, no pet.). Whether a party has waived arbitration must be decided on a case-by-case basis, based upon an examination of the totality of the circumstances. *Perry Homes*, 258 S.W.3d at 591. A party may waive contractual arbitration rights by substantially invoking the judicial process to the detriment of the other party. *Id.* at 589–90. The judicial process is substantially invoked when the party seeking arbitration has taken specific and deliberate actions, after the filing of the suit, that are inconsistent with the right to arbitrate or has actively tried, but failed, to achieve a satisfactory result through litigation before turning to arbitration. *See In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (per curium). Factors considered when determining whether a

movant has substantially invoked the judicial process include when the movant knew of the arbitration clause, how much discovery has been initiated and who initiated it, the extent to which discovery related to the merits rather than arbitrability or standing, how much of the discovery would be useful in arbitration, whether the movant sought judgment on the merits, and whether the movant sought to compel arbitration on the "eve of trial." *Id.* at 590–92.

The record does not support a conclusion that Seven Hills substantively invoked the judicial process "to the detriment" of appellees before moving to compel arbitration. *See Perry Homes*, 258 S.W.3d 589–90. Although a final judgment was entered in the case, the trial court also granted Seven Hills's motion for new trial after concluding Seven Hills failed to file an answer to the counterclaims lodged against it because of mistake or accident, the failure to appear was not intentional or due to conscious indifference, Seven Hills has meritorious claims and defenses, and granting a new trial would not cause delay or injury.

There is no evidence that discovery has been conducted in this case, that Seven Hills has attempted to initiate discovery, or that Seven Hills has ever sought judgment on the merits of its claims. Further, Seven Hills did not wait until the eve of trial to seek to compel arbitration. Rather, it moved to compel arbitration only a few weeks after the trial court entered its July 22, 2013 order on Seven Hills's motion for new trial.

We conclude that Seven Hills did not substantially invoke the judicial process before moving for arbitration, and Seven Hills has not waived its right to compel arbitration. We sustain Seven Hills's second issue to this extent. We do not address whether an LLC may waive its right to arbitration when the alleged waiver occurs while the LLC is being controlled by a non-adverse party.

D.     **Conditions Precedent**

Appellees argue that even if the appellants can compel arbitration and the claims asserted in this suit fall within the arbitration provision, the Operating Agreement clearly requires that certain conditions precedent be met before a party can compel arbitration. Citing paragraphs 9.4(a) and (b) of the Operating Agreement, they assert there are two conditions precedent—good-faith negotiations and mediation before JAMS—that must occur before any obligation to arbitrate arises. They claim that neither of these conditions has been met and, therefore, they cannot be compelled to arbitrate even if the claims were subject to arbitration.

Appellants present two reasons why appellees' argument fails. First, they assert paragraphs 9.4(a) and (b) only apply to "Members," meaning to Catenary, MCHI, and FST; the Operating Agreement does not require any other party to this lawsuit to negotiate or mediate as a condition precedent to arbitrating. Second, they argue appellees are judicially estopped from arguing that conditions precedent did not occur because they previously conceded there were pre-suit negotiations. At a hearing before the trial court, counsel for some parties stated that when the dispute arose, "We immediately started negotiating towards resolutions between the clients that I represent and [Catenary, PREG, and Mr. Post]. . . . [W]e exchanged several settlement offers back and forth, and at some point it became clear that it was likely this may not resolve." At that time, counsel was retained and Seven Hills filed suit.

Questions about whether prerequisites to arbitration have been fulfilled generally are left to the arbitrator to resolve. *Howsam*, 537 U.S. at 84-85; *Amir v. Int'l Bank of Commerce*, 419 S.W.3d 687, 692 (Tex. App.—Houston [1st. Dist.] 2013, no pet.) (citing *In re Pisces Foods, L.L.C.*, 228 S.W.3d 349, 352 (Tex. App.—Austin 2007, orig. proceeding)); *Austin Commercial Contractors, L.P. v. Carter & Burgess, Inc.*, 347 S.W.3d 897, 902 (Tex. App.—Dallas 2011, pet. denied) (whether party failed "to satisfy conditions precedent to arbitration are matters of procedure that are for the arbitrator and not for the court."). However, there is a narrow

exception to this rule: if clearly established proof shows that a strictly procedural requirement has not been met and that procedural requirement precludes arbitration, a court can deny a motion to compel arbitration on this ground. *Amir*, 419 S.W.3d at 692. The exception may apply and a court may determine procedural arbitrability questions when the issues are factually undisputed. *See In re Pisces Foods, L.L.C.*, 228 S.W.3d 352-53.

Here, there is not clearly established proof that a strictly procedural requirement has not been met. The parties disagree about the facts pertaining to the alleged conditions precedent, specifically whether paragraphs 9.4(a) and (b) only require Members to negotiate and mediate. Further, the parties agreed that an arbitrator would determine "the scope or applicability of this Agreement to arbitrate," which includes whether the conditions precedent, if any, were met. Because this case does not fit within the narrow exception to the general rule that arbitrators generally resolve issues of whether prerequisites to arbitration have been fulfilled and because the parties agreed an arbitrator would make such decisions, we conclude the arbitrator has the primary responsibility to decide whether conditions precedent, if any, have been met.

### E. Injunction

In its third issue, Seven Hills states that the trial court issued an injunction that was improper as a matter of law. On September 11, 2013, the trial court entered an order granting appellees' motion to stay and dismiss the arbitration and denying Seven Hills's motion to compel arbitration. In the order, the trial court stayed the arbitration initiated on October 30, 2012, and ordered that Seven Hills, Catenary, and Mr. Post "are enjoined to and shall request and cause the Arbitration to be dismissed." The trial court further ordered that Seven Hills, Catenary, and Mr. Post "are permanently enjoined from continuing, pursuing, convening, issuing orders or awards, and/or taking any further action in the Arbitration or demanding or initiating another arbitration

–21–

against Guion, Mirabal, MCHI, D&G, and FST regarding the same claims or facts alleged in the Arbitration." The trial court vacated this order on September 18, 2013.

Additionally, on October 30, 2013, this Court conditionally granted a petition for writ of mandamus in which we ordered the trial judge to "**VACATE** the portions of his September 11, 2013 order granting first amended application to stay and dismiss arbitration and denying plaintiff's motion to compel arbitration and stay/abate or, alternatively, to compel arbitration and dismiss and of his September 18, 2013 amended order that require[d] dismissal of the arbitration." *See In re Seven Hills Commercial, Inc.*, No. 05-13-01340-CV, 2013 WL 6051280, *1 (Tex. App.—Dallas Oct. 30, 2012, orig. proceeding). The trial judge complied with our order. As a result, there is no order from the trial court ordering Seven Hills to dismiss its claims brought in arbitration against appellees, and there is nothing for us to consider beyond the issue we previously resolved. We overrule Seven Hills's third issue.

### F.     Unconscionability

Appellees argue that even if appellants have a right to compel arbitration, the trial court's decision should be upheld because the "arbitration agreement is [substantively] unconscionable" and, therefore, cannot be enforced. Paragraph 9.4(c) of the Operating Agreement provides that the arbitration shall be held in Los Angeles, California, and shall be administered by JAMS. JAMS rule 26(a) states: "Each Party shall pay its *pro-rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the Parties agree on a different allocation of fees and expenses. JAMS agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration." Appellees interpret JAMS rule 26(a) to mean that JAMS "purports to impose joint and several liability for arbitration fees on the attorney for the party."

–22–

Mr. Guion filed an affidavit in the trial court stating his chosen counsel would not represent him in the pending arbitration before JAMS without a separate retainer maintained for payment of JAMS's fees, expenses, and costs, which FST, D&G, and Mr. Guion cannot provide. Mr. Mirabal filed an affidavit containing substantially similar statements. Because appellees' counsel declined to represent them without first obtaining a separate retainer for the purpose of paying the JAMS fees and appellees were unable to make such a deposit with their lawyer, appellees argue they were unable to retain the attorney of their choice to represent them in the arbitration. Thus, they argue, the arbitration provision is substantively unconscionable.

As an initial matter, we previously concluded that the trial court did not err by refusing to order the claims asserted by D&G and Mr. Guion against PREG, Post-Investment, and Mr. Post to arbitration. These claims will remain in the trial court. Thus, our discussion of this issue does not apply to D&G and Mr. Guion.

Because the law favors arbitration, the party opposing arbitration bears the burden to prove unconscionability. *See In re First Merit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001); *Pilot Travel Ctrs., LLC v. McCray*, 416 S.W.3d 168, 180 (Tex. App.—Dallas 2013, no pet.). An arbitration agreement may be considered substantively unconscionable. Substantive unconscionability refers to fairness of an arbitration provision. *See McCray*, 416 S.W.3d at 182. A contract is substantively unconscionable if, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re Poly–Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (quoting *In re First Merit Bank*, 52 S.W.3d at 757).

The evidence in the record is that chosen counsel for MCHI, Mr. Mirabal, and FST would not undertake the representation without "a separate retainer maintained separately for payment

of JAMS [sic] fees, expenses and costs" and MCHI, Mr. Mirabal, and FST "can [not] deposit a separate retainer for JAMS [sic] fees, expenses, and costs in a sufficient amount." The amount of JAMS's fees for this arbitration and the amount that MCHI, Mr. Mirabal, and FST's counsel seeks as a retainer is not in the record.

The parties selected JAMS and JAMS's Streamlined Arbitration Rules and Procedures at the time they executed the Operating Agreement. MCHI, Mr. Mirabal, and FST do not argue that Rule 26(a) about which they now complain was not part of these Rules and Procedures when they made the agreement. All signatories to the Operating Agreement agreed to be bound by the JAMS rules. The arbitration agreement shows the litigants' choice; the terms of the agreement do not favor either party. *See In re Olshan Foundation Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010) (quoting *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90-91 (Tex. 1996) (per curium)).

We conclude that MCHI, Mr. Mirabal, and FST have not proven that JAMS's Rule 26(a) is substantively unconscionable. We decline to uphold the trial court's refusal to compel arbitration on unconscionability grounds.

## CONCLUSION

We reverse the trial court's August 29, 2013 order except as it applies to Mr. Halperin who is not a party to this appeal.

As to the trial court's September 18, 2013 order titled "Amended Order Granting, in part, the First Amended Application to Stay & Dismiss Arbitration, and Denying Plaintiff's Motion to Compel Arbitration and Stay/Abate or, Alternatively, to Compel Arbitration and Dismiss": (1) we reverse the trial court's order granting the first amended application to stay and dismiss arbitration filed by MCHI, Mr. Mirabal, FST, D&G, and Mr. Guion; (2) we reverse the trial court's order denying Seven Hills's "Motion to Compel Arbitration and Stay/Abate or,

–24–

Alternatively, to Compel Arbitration and Dismiss;" and (3) we reverse the trial court's order that Seven Hills shall dismiss its claims brought in arbitration. In other respects, we affirm the trial court's order.

As to the trial court's December 10, 2013 Order, we reverse the order denying Catenary, PREG, Post-Investment, and Mr. Post's motion and supplemental motion to compel arbitration of MCHI's claims against them, and we reverse the trial court's order denying the request that the case be stayed or abated (as it relates to that claim) until the arbitration has concluded. In all other respects, we affirm the trial court's order.

Specifically, we direct the trial court to order the parties to take those disputes that may be arbitrable—including their dispute as to arbitrability—to arbitration and thereafter abate proceedings on those claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(c). At this stage in the dispute, we express no opinion about whether the claims in this matter (other than the claims by D&G and Mr. Guion against PREG, Post-Investment, and Mr. Post) must be arbitrated; that issue shall be resolved by the arbitrator.

We remand this case to the trial court for further proceedings.

131306F.P05

/Jim Moseley/
JIM MOSELEY
JUSTICE

–25–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SEVEN HILLS COMMERCIAL, LLC,
CATENARY GROUP, LLC, POST REAL
ESTATE GROUP, INC., POST
INVESTMENT GROUP, LLC, AND
JASON POST, Appellants

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. CC-1206312D.
Opinion delivered by Justice Moseley.
Justices Lang and Brown participating.

No. 05-13-01306-CV          V.

MIRABAL CUSTOM HOMES, INC., FST
GROUP, LLC, D&G INVESTMENT
GROUP, LLC, JASON MIRABAL, AND
GARY GUION, Appellees

In accordance with this Court's opinion of this date, the orders of the trial court are
**AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** the trial court's August 29, 2013 order except as it applies to Leon
Halperin who is not a party to this appeal.

As to the trial court's September 18, 2013 order titled "Amended Order Granting, in part,
the First Amended Application to Stay & Dismiss Arbitration and Denying Plaintiff's Motion to
Compel Arbitration and Stay/Abate or, Alternatively, to Compel Arbitration and Dismiss": (1)
We **REVERSE** the trial court's order granting the first amended application to stay and dismiss
arbitration filed by appellees Mirabal Custom Homes, Inc., Jason Mirabal, FST Group, LLC,
D&G Investment Group, LLC, and Gary Guion; (2) we **REVERSE** the trial court's order
denying the "Motion to Compel Arbitration and Stay/Abate or, Alternatively, to Compel
Arbitration and Dismiss" filed by Seven Hills Commercial, LLC; and (3) we **REVERSE** the trial
court's order that Seven Hills Commercial, LLC dismiss its claims brought in arbitration. In
other respects, we **AFFIRM** the trial court's order.

As to the trial court's December 10, 2013 order, we **REVERSE** the order denying
appellants Catenary Group, LLC's, Post Real Estate Investment Group, Inc.'s, Post Investment
Group, LLC's, and Jason Post's motion and supplemental motion to compel arbitration of claims
made by Mirabal Custom Homes, Inc. against them. We **REVERSE** the trial court's order
denying the request that the case be stayed or abated (as it relates to that claim) until arbitration
has concluded. In all other respects, we **AFFIRM** the trial court's order.

We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

We **ORDER** that each party bear its own costs of the appeal.


Judgment entered this 7th day of August, 2014.