

# NUMBER 13-15-00204-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**BROCK SERVICES, LLC F/K/A
MIKEN SPECIALITIES, LTD.,**                                          **Appellant,**

**v.**

**EDUARDO SOLIS,**                                                       **Appellee.**

## On appeal from the County Court at Law No. 1
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant Brock Services, LLC f/k/a Miken Specialties, Ltd., (Brock) files this

interlocutory appeal challenging the denial of its motion to compel arbitration pursuant to

section 51.016 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. &

REM. CODE § 51.016 (West, Westlaw through 2015 R.S.). By one issue, Brock contends

that the trial court erred in denying its motion to compel arbitration because it established the existence of a valid arbitration agreement between the parties and because the agreement provided that issues of arbitrability are to be determined by the arbitrator. We reverse and remand.

## I.    BACKGROUND

Brock employed appellee Eduardo Solis on at least two separate occasions over a two-year period. Solis' penultimate employment with Brock began on August 19, 2011 and continued for almost two months. Within a few days of his hire, on August 22, 2011, Solis signed a Dispute Resolution Agreement (DRA) that contained an arbitration provision. The DRA created a "mutual obligation to arbitrate between . . . [Brock], and all employees of [Brock] . . . ." The DRA purportedly applied to any present or future claims, "whether known or unknown, arising out of or related to employment or termination of employment with [Brock]" and stated that the claims "shall be resolved only through final and binding arbitration, pursuant to the Federal Arbitration Act [FAA] . . . and not by way of court or jury trial."

Solis' subsequent employment with Brock began in February 2012 and continued through October 2012. Upon his rehire in February, Solis did not sign another DRA. In October of 2012, Solis sustained an on-the-job injury for which he sought medical attention; he was placed on light duty at that time. Solis then filed a claim for workers' compensation. On October 26, 2012, Brock fired Solis. Brock stated, as the basis for Solis' termination, that Solis violated the company's "no-call no-show" policy.

Solis filed a civil suit in County Court at Law No. 1 in Hidalgo County, Texas, in which he alleged that Brock wrongfully terminated his employment. Solis contends that

he was fired in retaliation for filing a workers' compensation claim. On April 1, 2015, the trial court heard argument on Brock's motion to compel arbitration and, on April 6, 2015, entered an order denying the motion. This interlocutory appeal followed.

## II.  ARBITRATION

By its sole issue on appeal, Brock contends that the trial court abused its discretion by refusing to compel arbitration. Specifically, Brock asserts that there was an express arbitration agreement between the parties that controls for the purposes of litigation. We agree.

### A.  Standard of Review & Applicable Law

In appeals under section 51.016 of the Texas Civil Practice and Remedies Code we review the trial court's ruling for an abuse of discretion. TEX. CIV. PRAC. & REM. CODE ANN. § 51.016; *see In re 24R, Inc.,* 324 S.W.3d 564, 568 (Tex. 2010). Under that standard, "we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo." *In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 643 (Tex. 2009). Whether an arbitration clause imposes a duty to arbitrate is a question of law we review de novo. *Id.*

Arbitration involves matters of contract, and a party cannot be compelled to submit to arbitrate a dispute absent an agreement to do so. *See Ascendant Anesthesia PLLC v. Abazi,* 348 S.W.3d 454, 458 (Tex. App.—Dallas 2011, no pet.). A party seeking to compel arbitration pursuant to the FAA must establish that: (1) there is a valid arbitration agreement, and (2) the claims raised fall within the agreement's scope. *See In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex. 2005). Pursuant to Texas law, we apply traditional contract principles to determine the validity of an arbitration

3

agreement. *See J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003).

Before analyzing whether the alleged claims fall within the scope of the arbitration agreement "a threshold matter we first consider is who has the primary power to decide whether appellants can compel appellees to arbitrate: a court or an arbitrator". *Seven Hills Commercial, LLC v. Mirabal Custom Homes, Inc.*, 442 S.W.3d 706, 714 (Tex. App.— Dallas 2014, pet. denied). Typically, the trial court determines whether the parties have agreed to arbitrate an issue. *Seven Hills,* 442 S.W.3d at 715. However, parties may contractually agree that the arbitrator determine all issues of arbitrability. *See Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002); *Saxa Inc. v. DFD Architecture Inc.,* 312 S.W.3d 224, 229 (Tex. App.—Dallas 2010, pet denied); *Ernst & Young LLP v. Martin,* 278 S.W.3d 497, 500 (Tex. App.—Houston [14th Dist.] 2009, no pet.). In that instance, the trial court should grant the motion to compel arbitration to allow the arbitrator to determine whether the particular dispute is subject to arbitration. *See Howsam,* 537 U.S. at 83; *Saxa Inc.,* 312 S.W.3d at 229; *Martin,* 278 S.W.3d at 500.

"Courts should not assume that parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable evidence that they did so.'" *Seven Hills,* 442 S.W.3d at 715 (citing *Roe v. Ladymon,* 318 S.W.3d 502, 511 (Tex. App.—Dallas 2010, no pet.) (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)). "[A] court must examine the arbitration agreement to decide if, when construed under relevant state law, the agreement evidences a clear and unmistakable intention that the arbitrators will have the authority to determine the scope of arbitration." *Saxa,* 312 S.W.3d at 229; *see also Leshin v. Oliva,* No. 04-14-00657-CV, 2015 WL 4554333, at *6 (Tex. App.—San Antonio July 29, 2015, no pet. h.) (mem. op.). If the trial court determines that the movant has

4

established that a valid arbitration agreement exists between the parties and that the parties evidenced a "clear and unmistakable" intention to arbitrate questions of arbitrability, then a motion to compel arbitration should be granted. *See id.*

### B.    Existence of a Valid Arbitration Agreement

We begin our analysis by determining whether Brock has established the existence of an arbitration agreement with Solis. *See In re Kellogg Brown & Root,* 166 S.W.3d at 737. The following elements are required for the formation of a valid and binding contract in Texas:   1) an offer; 2) acceptance in strict compliance with the terms of the offer; 3) a meeting of the minds; 4) each party's consent to the terms; and 5) execution and delivery of the contract with the intent that it be mutual and binding. *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287, 291 (Tex. App.—Corpus Christi 2003, pet. denied). Consideration is also a fundamental element of every valid contract. *See id.* In the context of a bilateral arbitration agreement, consideration may consist of mutual promises to submit disputes to arbitration if the promises create a mutuality of obligation between the parties. *See J.M. Davidson,* 128 S.W.3d at 228. However, "when illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation and, thus, there is no contract." *See In re C&H News,* 133 S.W.3d 642, 647 (Tex. App.—Corpus Christi 2003, no pet.). A promise is illusory when it fails to bind the promisor, who retains the option of discontinuing performance. *Id.*

On appeal, Solis challenges the element of consideration in asserting that the DRA is not a valid contract. Solis argues that the consideration was illusory because Brock reserved complete discretion to rescind, modify, or alter the arbitration agreement at any time and therefore cannot show that the alleged agreement is based on valid

consideration or mutuality of obligation. Solis sites *J.W. Davidson, Inc.* and its progeny for the proposition that the parties' exchange of promises to arbitrate are not enforceable because Brock maintained discretion to modify, rescind, or alter the agreement at any time. *See* 128 S.W.3d at 230 (noting that the arbitration agreement was ambiguous in that it was not clear whether the company had the right to "unilaterally abolish or modify" the arbitration provision); *In re C&H News,* 133 S.W.3d at 647 (recognizing that the employer reserved the right to "unilaterally change the scope of the arbitration agreement"). Solis further attempted to distinguish the DRA at issue from an arbitration provision upheld by the Texas Supreme Court in *In re Halliburton Co.,* where the supreme court found that the arbitration provision was not illusory because the company's promise to arbitrate disputes was adequate consideration to support the arbitration agreement. *See* 80 S.W.3d 566, 572–73 (Tex. 2002).

We review the DRA at issue to determine whether there exists a mutuality of obligation such that Brock and Solis are equally bound to the arbitration provision at issue. *See J.M. Davidson,* 128 S.W.3d at 228–29; *In re Halliburton Co.,* 80 S.W.3d at 573–73. Paragraph nine of the agreement provides as follows:

> This Dispute Resolution Policy is a mutually binding agreement between The Brock Group and all employees. It is distinct, separate and different from any other modifiable company policy provision. The Dispute Resolution Policy may not be changed or modified by The Brock Group, except with the *acceptance* of the employee after 60 days['] notice.

(Emphasis added.) Not only does the DRA provide for a 60-day notice period, it also explicitly requires "acceptance" of the proposed changes before they can be made.[1]

---

[1] Solis raises the argument that as a prior employee, he would not be notified of any pending changes to the Dispute Resolution Agreement (DRA). We note, however, that the terms of the provision

Therefore, both Brock and Solis are bound by the terms of the agreement, absent a later agreement to modify the same. *See In re Halliburton,* 80 S.W.3d at 272–73. We determine as a matter of law that the mutual promise to arbitrate was not illusory and constituted sufficient consideration to support the formation of a valid arbitration agreement.[2] *See id.*; *Abazi,* 348 S.W.3d at 458. We therefore conclude that Brock established all elements for the formation of a valid arbitration agreement between the parties. *See In re Halliburton,* 80 S.W.3d at 272–73; *ABB Kraftwerke Aktiengesellschaft,* 115 S.W.3d at 291.

### C. Trial Court or Arbitrator to Determine Arbitrability

Having determined that a valid arbitration agreement exists between the parties, we must next determine whether the agreement evidences a clear and unmistakable intent to submit questions concerning the arbitrability of a particular claim to the arbitrator. *See Forest Oil Corp.,* 268 S.W.3d at 61. Brock contends that the contract clearly and unmistakably sets forth an intention for the arbitrator to determine all issues of arbitrability. We agree with Brock.

Parties show a "clear and unmistakable" intent to submit questions of arbitrability to arbitration by either (1) including a clause in the agreement that directs this function to the arbitrator or (2) incorporating rules into the agreement that empower the arbitrator to

---

apply at the employee level and require acceptance by that employee. Therefore, Brock would be incapable of changing the terms of the DRA between it and Solis without Solis' prior consent.

[2] Solis also contends that Brock's ability to modify the terms of the contract rendered it "indefinite" in that "neither the courts nor Brock Services can possibly say what Brock Services purportedly 'agreed' to do." As we determined that paragraph 9 of the DRA does not allow Brock to modify the terms of the DRA without prior agreement, the mutual promises to arbitrate in the DRA are sufficiently definite. *See Meru v. Huerta,* 136 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2004, no pet.) (recognizing that a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook).

determine arbitrability, or both. *Id.* The DRA at issue provides that "all issues of arbitrability" are to be determined by an arbitrator pursuant to the FAA. We agree with Brock that the agreement between the parties shows a clear and unmistakable intent to submit questions of arbitrability to arbitration. *See id.* Therefore, all questions pertaining to the scope of the arbitration agreement, including a determination of whether Solis' retaliation claim is subject to arbitration under the 2011 DRA, should be determined by an arbitrator pursuant to the arbitration agreement between the parties. *See Howsam,* 537 U.S. at 83; *Forest Oil Corp.,* 268 S.W.3d at 61; *Seven Hills,* 442 S.W.3d at 715; *Saxa,* 312 S.W.3d at 229.

**D.    Summary**

Brock has proven the existence of a valid contract and has shown that the contract evidenced a clear and unmistakable intent to submit questions of arbitrability to arbitration. Therefore, we conclude that the trial court abused its discretion in denying its motion to compel arbitration and refusing to stay proceedings in the trial court pending arbitration. *See Howsam,* 537 U.S. at 83; *Forrest Oil Corp.,* 268 S.W.3d at 61; *Seven Hills,* 442 S.W.3d at 715; *Saxa,* 312 S.W.3d at 229.

We sustain Brock's sole issue on appeal.

### III.    CONCLUSION

We reverse and remand for further proceedings consistent with this opinion.


NELDA V. RODRIGUEZ
Justice

Delivered and filed the 8th
day of October, 2015.

8