James **RODRIGUEZ**, Appellant,

v.

**SOUTHWESTERN DRUG CORPORATION,**
Appellee.

**No. B2649.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

July 22, 1981.

James H. Elder, III, Houston, for appellant.

Roger S. Poser, Sears & Doherty, Ross A. Sears, Sears & Doherty, Houston, for appellee.

Before COULSON, MILLER and MURPHY, JJ.

MURPHY, Justice.

James Rodriguez appeals from a judgment entered in favor of Southwestern Drug Company. We affirm.

In 1973 William A. Caudel (Caudel) purchased the Berry Pharmacy from Hugh R. Stewart (Stewart). Payment was by a promissory note executed in the amount of $83,000.00. The note was secured by perfected security interests in the inventory, equipment and fixtures of the pharmacy. Caudel operated the business for five years, however, in May of 1978, Stewart was notified by Caudel that he would be unable to continue payments on the note. At that time and by agreement of the parties Stewart took possession of Berry Pharmacy and began operating the business. Caudel executed a $24,000.00 promissory note payable to Stewart, this amount being the agreed indebtedness owed to Stewart after the default and subsequent repossession of the pharmacy.

During the five year period Caudel owned and operated the business, the appellee, Southwestern Drug Company (Southwestern), provided merchandise and inventory to the Berry Pharmacy. At the time Stewart took over the business from Caudel, the amount of $30,691.17 was owed to Southwestern by Caudel. A promissory note in the amount of $17,774.61 was executed September 9, 1977 by Caudel to the order of Southwestern. No security agreement was entered into, but a financing statement was filed in an attempt to secure the note, naming the inventory of the Berry Pharmacy as collateral. The remainder of the amount owed to Southwestern was evidenced by an open account. Caudel subsequently defaulted on the note executed to Southwestern, with a balance of $9,299.00 outstanding on the note as of August, 1978. Caudel also failed to pay any of the amount owed on the open account.

On August 31, 1978 Stewart, joined by Caudel, agreed to sell the pharmacy to the appellant, James Rodriguez (Rodriguez). The contract entered into pursuant to the sale set out the circumstances surrounding the default by Caudel and the subsequent take-over by Stewart. No reference was made as to the amount owed to Southwestern by Caudel, however, the following language was included in the contract:

"It is further understood by all the undersigned that there have been no representations nor claims concerning the nature, character, attributes, ingredients, uses, benefits or quantities and that the buyers hereunder have inspected the properties at or immediately before the date of this transaction and are accepting the properties in their present condition *subject to valid claims by persons other than the parties hereto.*" (Emphasis added)

The selling price for Stewart's interest in the pharmacy was $24,000.00 and was paid by a promissory note executed by Rodriguez to Stewart. The note sets out that the instrument is secured, but after an examination of the record we find no evidence demonstrating the existence of a security agreement or a financing statement made pursuant to the note from Rodriguez to Stewart.

On August 29, 1981, two days before the actual purchase of the pharmacy, Rodriguez executed a promissory note to Southwestern in the amount of $30,691.17, said sum being the amount allegedly owed by John Caudel d/b/a the Berry Pharmacy to Southwestern as of August, 1978. The circumstances surrounding the execution of the note are important to the disposition of

this case. Prior to the signing of the note, representatives of Southwestern met with Rodriguez on two occasions to discuss matters relevant to the purchase of the pharmacy. What actually transpired at these two meetings is disputed throughout the statement of facts. Rodriguez testified the meetings were conducted simply for the purpose of examining Rodriguez's educational background, qualifications, experience and ability to adequately operate the pharmacy. In response to certain questions at trial, Rodriguez insisted no statements were made concerning any interest Southwestern may have had in the Berry Pharmacy. Rodriguez did testify he signed the promissory note, indicating he did so because the Southwestern representatives informed him the instrument had to be signed in order to take ownership of the business. In spite of this testimony, Rodriguez insisted he did not know the purpose of the note, other than the execution of the same was necessary to obtain ownership of the pharmacy.

The testimony of the general manager of Southwestern, Edward J. Fisher contradicts the statements made by Rodriguez, as follows:

"Q: Did you specifically tell Mr. Rodriguez that it would be necessary for him to assume Mr. Caudel's indebtedness to purchase the store?

A: Yes, we were all together to come up with a mutual prospect.

Q: Did Mr. Rodriguez agree to execute that note knowing the purpose for which you were asking him to do so?

A: Yes, he did.

Q: Did he sign that note in your presence?

A: Yes."

After refusing to tender any payments on the note Rodriguez filed this suit against Southwestern alleging: (1) no value had been received for the indebtedness assumed by the note; (2) the note was null and void due to a lack of consideration; and (3) in the alternative, a unilateral mistake was made by Rodriguez and a rescission should

therefore be granted. Southwestern filed a counter-claim alleging Rodriguez had failed to make any payments on the note and therefore was in default and owed the full amount of the note plus interest to Southwestern. The counter-claim further alleged the note was executed as part of the amount paid for the purchase of Berry Pharmacy and the consideration for execution of the note was Southwestern's forbearance to file suit against Caudel for his default on the note to Southwestern thereby granting Rodriguez the right to use and sell the inventory represented by the past indebtedness. The trial court held that Southwestern recover from Rodriguez the amount of the note plus the interest accrued thereon, post judgment interest, costs of court and attorney's fees. It is from this judgment Rodriguez has brought this appeal.

Rodriguez's main contention is the trial court erred in its findings that there existed consideration in support of the note. The trial judge in his findings of fact found in relation to the consideration issue:

"10. James Rodriguez received, as consideration for the execution of his note payable to Southwestern Drug Corporation, Southwestern Drug Corporation's forbearance and waiver of its right to file suit against the Berry Pharmacy and William Caudel, and/or Southwestern Drug Corporation's waiver of their right to recover the goods, wares, merchandise and inventory therein by way of attachment and/or sequestration; and

11. James Rodriguez received as further consideration for executing the $30,691.17 note to Southwestern Drug Corporation, the right to keep and sell the goods, wares, merchandise and inventory in the Berry Pharmacy at the time of his purchase."

The judge further found in his conclusions of law:

"2. James Rodriguez would be unjustly enriched by the value of the goods, wares, merchandise and inventory located in the Berry Pharmacy at the time of his purchase thereof if he is not forced to pay Southwestern Drug Corporation pursuant to the promissory note made the basis of this lawsuit.

3. Southwestern Drug Corporation should have and recover judgment from James Rodriguez in the total sum of $36,388.36."

Rodriguez contends in points of error 7 through 13 the trial judge erred in his findings of fact and conclusions of law hereinabove set out. We disagree. The rule is well settled in Texas that the burden of proving a want or failure of consolidation is upon the pleader. *Decor Dimensionals, Inc. v. Smith*, 494 S.W.2d 266 (Tex.Civ.App.—Waco), *rev'd on other grounds*, 511 *Newton*, 77 Tex. 508, 14 S.W. 157 (1890); *Darden v. Harrison*, 495 S.W.2d 49 (Tex.Civ.App.—Waco), *rev'd on other grounds* 511 S.W.2d 925 (Tex.1974). The burden rests upon the party alleging lack of consideration to prove the same because of the general rule that a written contract is presumed to be supported by consideration. *Decor Dimensionals, Inc. v. Smith, id.* As stated by Justice Gaines in *Newton v. Newton: id.* "The note imposed a consideration, and the burden was upon the defendants to show that there was none. The effect of the sworn plea was not to shift the burden of proof, but merely to put the consideration in issue." 77 Tex. 508, 14 S.W. 157, 158; *See also Thigpen v. Thigpen*, 563 S.W.2d 868 (Tex.Civ.App.—San Antonio 1978, no writ); *Decor Dimensionals, Inc. v. Smith, id.* We note Rodriguez failed to properly plead at trial the affirmative defense of want of consideration as required by Tex.R.Civ.P. 93(j) and 94. However, Southwestern failed to make any exception to this defect. Therefore, even though the defense was not properly pled, Southwestern waived any right to complain of the error. Tex.R.Civ.P. 90. In effect, the issue of want of consideration has been tried by consent. *Echols v. Bloom et ux.*, 485 S.W.2d 798 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.); Tex.R.Civ.P. 67.

After an examination of the record before us we find that Rodriguez has failed to meet his burden of showing the note lacked consideration. The contract Rodriguez entered into with Stewart and Caudel to purchase the pharmacy related only to the interest owned by Stewart and Caudel in the business, however, the parties also agreed Rodriguez was to take the store "subject to valid claims by persons other than the parties hereto." The indebtedness owed to Southwestern does represent a valid claim because Rodriguez has failed to prove its invalidity. In the total scheme to purchase the Berry Pharmacy, Rodriguez was required to buy the interest of Stewart and Caudel and pay any other claims or debts owed by the pharmacy.

Having found there existed a valid claim by Southwestern and that Rodriguez failed to overcome the presumption that there existed consideration, we are compelled to affirm the judgment of the trial court. Rodriguez's remaining points of error are overruled.