ABB KRAFTWERKE AKTIENGE-
SELLSCHAFT and ABB Alstom Pow-
er (Switzerland) Ltd., f/k/a ABB Pow-
er Generation, Ltd., Appellants,

v.

BROWNSVILLE BARGE &
CRANE, INC., Appellee.

No. 13–01–00756–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Aug. 28, 2003.

Rehearing Overruled Oct. 2, 2003.

Justin L. Williams, Corpus Christi, for Appellants.

Javier Gonzalez, Keith N. Uhles, Royston, Rayzor, Vickery & Williams, Brownsville, Jon D. Brooks, Rangel Law Firm, P.C., Corpus Christi, for Appellee.

Before Justices HINOJOSA, CASTILLO, and CHAVEZ.[1]

## OPINION

Opinion by Justice HINOJOSA.

This case requires us to determine the validity of an indemnity agreement. In three issues, appellants, ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., f/k/a ABB Power Generation, Ltd. ("ABB"), contend the trial court erred in granting the motions for summary judgment of appellee, Brownsville Barge & Crane, Inc. ("Brownsville Barge"). We affirm.

### A. BACKGROUND AND PROCEDURAL HISTORY

This case arises from the shipment of a large turbine generator from Manheim, Germany to Monterrey, Mexico, through the Port of Brownsville. ABB manufactured and arranged for the shipment of the 325–metric–ton generator from Germany to the Port of Brownsville. ABB contracted with C.H. Robinson ("Robinson") to transport the generator from the Port of Brownsville to Monterrey.

Robinson contracted with Schaefer Stevedoring ("Schaefer") to provide stevedoring services at the Port of Brownsville. Schaefer was to offload the generator from a lash barge and load it onto a railway car alongside the dock. Schaefer entered into a "Lifting Services Agreement" with Brownsville Barge for its floating crane barge, the "Atlantic Giant," to make the lift. The Atlantic Giant was the only floating crane between Houston, Texas and Tampico, Mexico, capable of lifting this

---

[1]. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

generator because of its size and configuration. In the months preceding the lift, Brownsville Barge was given partial payment for the use of the Atlantic Giant. All necessary arrangements and permits to move the generator into Mexico were also obtained.

Just before the lift, Brownsville Barge approached representatives of ABB and Robinson and asked them to sign an indemnity agreement, attached as an exhibit to the Lifting Services Agreement entered into between Brownsville Barge and Schaefer. Brownsville Barge informed the representatives that it would not provide the lifting equipment if ABB's representative did not sign the indemnity agreement. ABB signed the indemnity agreement; Robinson refused.

Oscar Zamora, Sr., was a longshoreman at the Port of Brownsville. Zamora was the gang foreman of the longshoremen hired by Schaefer to perform the lift. During the lift, while the generator was suspended by the crane, a jacking plate fell from the generator and fatally injured Zamora. Zamora's family filed suit against ABB, Robinson, and Brownsville Barge for wrongful death. The lawsuit eventually settled.

Brownsville Barge filed a cross-claim against ABB, asserting ABB owed it contractual indemnity for the legal fees it incurred in defending against the Zamora family's claims. Brownsville Barge filed a motion for partial summary judgment and a no evidence motion for summary judgment, and the trial court granted both motions. ABB also filed a motion for summary judgment, which the trial court denied. This appeal ensued.

## B. Issues Presented

In three issues, ABB contends the trial court erred in granting Brownsville Barge's motions for summary judgment because: (1) Brownsville Barge did not have a valid contract with ABB; (2) there was no valid consideration for the indemnity agreement; and (3) the indemnity agreement was an unenforceable adhesion contract. ABB does not complain of the trial court's denial of its motion for summary judgment.

## C. Standard of Review

We review the grant of a traditional summary judgment de novo. *Alejandro v. Bell*, 84 S.W.3d 383, 390 (Tex.App.-Corpus Christi 2002, no pet.). To sustain a summary judgment, we must determine that the pleadings and summary judgment evidence establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *McFadden v. Am. United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex.1983). We accept all evidence favorable to the nonmovant as true, indulge the nonmovant with every reasonable inference, and resolve any doubt in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex.1985). Summary judgment is proper if the movant disproves at least one element of each of the plaintiff's claims or affirmatively establishes each element of an affirmative defense to each claim. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997).

By contrast, a no-evidence summary judgment presented under Texas Rule of Civil Procedure 166a(i) is equivalent to a pretrial directed verdict, and this Court applies the same legal sufficiency standard on review. *Zapata v. The Children's Clinic*, 997 S.W.2d 745, 747 (Tex.App.-Corpus Christi 1999, pet. denied). A no-evidence motion for summary judgment must be granted if: (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the

burden of proof at trial; and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements. *See* TEX.R. CIV. P. 166a(i). In reviewing a no-evidence summary judgment, we review the record in the light most favorable to the nonmovant to determine whether more than a scintilla of evidence was presented on the challenged elements of the nonmovant's claim. *See Wal–Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex.2002).

### D. LACK OF ENFORCEABLE CONTRACT

In its first issue, ABB complains that the trial court erred in granting summary judgment on Brownsville Barge's indemnity claim because Brownsville Barge did not have a valid contract with ABB.

The indemnity agreement was attached as an exhibit to the Lifting Services Agreement. ABB asserts the Lifting Services Agreement was only between Brownsville Barge and Schaefer. ABB argues that it was not a party to the Lifting Services Agreement.

Whether ABB was a party to the Lifting Services Agreement becomes relevant to our analysis only if we find that the indemnity agreement cannot stand on its own as a contract between ABB and Brownsville Barge. A contract of indemnity is an original obligation between the contracting parties, independent of other agreements. *Joseph Thomas, Inc. v. Graham*, 842 S.W.2d 343, 346 (Tex.App.-Tyler 1992, no writ). Indemnity contracts are construed under normal rules of contract construction. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex.1998). The indemnity agreement at issue must meet the criteria of a binding contract to be an original obligation and stand on its own.

Under Texas law, the requirements of a binding contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Labor Ready Cent. III, L.P. v. Gonzalez*, 64 S.W.3d 519, 522 (Tex.App.-Corpus Christi 2001, no pet.). Consideration is also a fundamental element of a valid contract. *Fed. Sign v. Tex. So. Univ.*, 951 S.W.2d 401, 408–09 (Tex.1997).

Because indemnity agreements involve an extraordinary shifting of risk, the supreme court has imposed certain fair-notice requirements. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993). These requirements incorporate the express negligence doctrine and mandate conspicuousness. *Id.* The express negligence doctrine requires that the intent of the party seeking indemnity from the consequences of that party's own future negligence must be expressed in unambiguous terms within the four corners of the contract. *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex.1987). The conspicuous requirement demands that significant terms must appear on the face of the agreement in such a way as to attract the attention of a reasonable person. *Dresser Indus.*, 853 S.W.2d at 508.

Brownsville Barge's representative approached Roland Schneider, ABB's authorized representative, with an indemnity agreement containing the following terms:

ABB and or C.H. Robinson Company shall release, defend, indemnify and hold Brownsville Barge & Crane, Inc., its directors, officers, employees, agents and subcontractors (Contractor Group) harmless from and against all liability, claims and losses, damages, punitive

damages, costs, expenses, attorney's fees, demands, suits, and causes of action of every kind (the "claims"), arising on account of personal injury or death or damage to property in any way incident to or in connection with or arising out of the "Lifting Services Agreement" dated March 22, 1999 between Schaefer Stevedoring, Inc. and Brownsville Barge & Crane, Inc. regardless of the sole, joint or concurrent negligence, negligence per se, gross negligence, statutory fault, or strict liability of any member of the Contractor Group or the unseaworthiness of any vessel owned operated or chartered by any member of the Owner Group without limit and without regard to the cause or causes thereof that may have caused or contributed to the claim, to the extent such indemnity obligations are not prohibited by applicable law.

By its very terms, the agreement purports to indemnify Brownsville Barge for liabilities resulting from its own future negligence. The agreement provides that ABB would "indemnify and hold harmless Brownsville Barge & Crane, Inc .... from and against all liability ... arising on account of personal injury or death ... arising out of the 'Lifting Services Agreement' ... regardless of the sole, joint or concurrent negligence" of Brownsville Barge employees. Brownsville Barge's intent as to what risk it intended to shift to ABB is clear from the four corners of the document. *See Atlantic Richfield Co. v. Petroleum Personnel, Inc.,* 768 S.W.2d 724, 726 (Tex.1989) (holding that language which sufficiently defines the parties' intent meets the requirements of the express negligence rule).

At the presentment of the indemnity agreement, the record reflects that Brownsville Barge made clear its position that execution of the lift was dependent on ABB signing the agreement. Thereafter, Schneider, ABB's Deputy General Manager, duly executed the indemnity agreement. It is undisputed that Schneider had full authority to bind ABB and to negotiate or consent to the terms of the indemnity agreement. Following execution of the agreement, Schneider consulted with Sandro Lepori, his supervisor in Switzerland. Lepori agreed that Schneider had appropriately signed the agreement. Thus, ABB accepted the offer when it returned the signed indemnity agreement to Brownsville Barge.

 ABB argues that Brownsville Barge did not sign the indemnity provision. However, the absence of a signature on a contract does not necessarily destroy its validity. *Simmons & Simmons Constr. Co., Inc. v. Rea,* 155 Tex. 353, 286 S.W.2d 415, 418 (1955); *Williams v. Brown & Root, Inc.,* 947 S.W.2d 673, 677 (Tex.App.-Texarkana 1997, no writ). As long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract, signatures are not a required factor in the making of a valid contract. *Rea,* 286 S.W.2d at 417–18.

There is no evidence in the record that Brownsville Barge did not consent to the terms of the indemnity agreement. The offer was presented with the clear understanding that Brownsville Barge would offer the services of the Atlantic Giant on the condition that ABB signed the indemnity agreement.

Thus, based on the foregoing objective evidence, we hold there was a proper offer, acceptance, consent to the terms of the agreement, and intent of the parties that the contract be mutual and binding. *See Sutton v. Estate of McCormick,* 47 S.W.3d 179, 182 (Tex.App.-Corpus Christi 2001, no pet.) (using an objective standard to examine whether there was a meeting of the

minds). Appellant's first issue is overruled.

### E. Lack of Consideration

In its second issue, ABB contends the trial court erred in granting Brownsville Barge's motion for summary judgment because there was no consideration to validate the indemnity agreement. ABB asserts that Brownsville Barge was already obligated to perform the lift under the terms of the Lifting Services Agreement signed between Brownsville Barge and Schaefer, and that the indemnity agreement is void for lack of new consideration.

A contract must be based upon a valid consideration, in other words, mutuality of obligation. *Fed. Sign.*, 951 S.W.2d at 408. Consideration is defined as "either a benefit to the promisor or a loss or detriment to the promisee. Surrendering a legal right represents valid consideration." *Northern Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex.1998). A contract that lacks consideration lacks mutuality of obligation and is unenforceable. *Fed. Sign*, 951 S.W.2d at 409.

There is a presumption that a written contract is supported by consideration. *Cortez v. Nat'l Bank of Commerce*, 578 S.W.2d 476, 479 (Tex.Civ.App.-Corpus Christi 1979, writ ref'd n.r.e.). As the party asserting lack of consideration, ABB had the burden to prove that there was no consideration for the indemnity agreement. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex.1991); *Rodriguez v. Southwestern Drug Corp.*, 619 S.W.2d 469, 472 (Tex.Civ.App.-Houston [14th Dist.] 1981, no writ).

Brownsville Barge's summary judgment evidence established that Brownsville Barge told ABB's representative that Brownsville Barge would not provide the Atlantic Giant unless ABB signed the indemnity agreement. In exchange for its agreement to indemnify Brownsville Barge, ABB received the benefit of the use of Brownsville Barge's lifting equipment so that its generator could be timely transported to Monterrey. We conclude that the exchange of consideration that passed between the parties, consisting of a promise to indemnify in exchange for the lifting services, was valid consideration to support the indemnity agreement.

ABB's contention that Brownsville Barge was already obligated to perform the lift under the Lifting Services Agreement misinterprets the terms of the Lifting Services Agreement which provided that "[a]t such time as [Schaefer] may request [Brownsville Barge] to perform lifting services and provided [Brownsville Barge] accepts to perform such services for [Schaefer], [Schaefer] shall issue to [Brownsville Barge] a work order setting forth the particulars of the lifting services to be performed.... All work ... for lifting services shall be governed by the terms and conditions of this Agreement...." The Lifting Services Agreement did not obligate Brownsville Barge to perform any services; rather, it stated the terms that would apply if ABB elected to use Brownsville Barge's services and Brownsville Barge agreed to provide such services.

We hold that ABB has failed to meet its burden to prove that there was no valid consideration for the written indemnity agreement. Accordingly, appellant's second issue is overruled.

### F. Economic Duress

In its third issue, ABB contends the trial court erred in granting Brownsville Barge's motion for summary judgment because the indemnity agreement was coerced by economic duress.

The elements of economic duress are: (1) a threat to do something that a party has no legal right to do; (2) illegal exaction or some fraud or deception; and (3) imminent restraint such as to destroy free agency without present means of protection. *King v. Bishop*, 879 S.W.2d 222, 223 (Tex.App.-Houston [14th Dist.] 1994, no writ); *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 109 (Tex.App.-Dallas 1987, writ ref'd n.r.e.).

ABB contends that Brownsville Barge "put a gun to ABB's head" and forced it to sign the indemnity agreement in the face of Brownsville Barge's refusal to otherwise provide the Atlantic Giant. Brownsville Barge's "threat" to the ABB representative may have been constraining to ABB, but it was not necessarily a threat to commit an act Brownsville Barge had no legal right to do. ABB and Brownsville Barge were not parties to any agreement at the time the offer was made. Therefore, there was no legal obligation for Brownsville Barge to break.

Additionally, the record does not indicate that ABB was forced to accept the indemnity agreement against its will. ABB could have refused to execute the indemnity agreement as Robinson chose to do. This action may have caused ABB to incur additional expenses in procuring the services of a crane comparable to the Atlantic Giant, yet this inconvenience does not amount to a destruction of free will. *See Simpson*, 724 S.W.2d at 109.

Finally, Brownsville Barge is not the party responsible for ABB's financial distress. Economic duress may be claimed only when the party against whom it is claimed was responsible for claimant's financial distress. *Deer Creek Ltd. v. North Am. Mortgage Co.*, 792 S.W.2d 198, 203 (Tex.App.-Dallas 1990, no writ). A claim of economic duress must be based on the acts or conduct of the opposite party and not merely on the necessities of the purported victim, or on a fear of what a third person might do. *First Tex. Sav. Ass'n of Dallas v. Dicker Ctr., Inc.*, 631 S.W.2d 179, 186 (Tex.App.-Tyler 1982, no writ). The mere fact that a person enters into a contract with reluctance, or as a result of the pressures of business circumstances, does not, of itself, constitute economic duress invalidating the contract. *Id.*

The record evidence shows that ABB's compulsion to deliver the generator without further delay to the original purchasers in Mexico was due to its original agreement with the purchasers. According to the terms of the purchase agreement, a delay in delivery would commence the accrual of liquidated damages. Because this financial distress originated from a party other than Brownsville Barge, it fails to support a claim of economic duress. *See Simpson*, 724 S.W.2d at 109.

Brownsville Barge merely presented ABB with a business decision-sign the indemnification agreement or face the loss of Brownsville Barge's lifting equipment. Such a situation does not amount to economic duress.

We conclude that Brownsville Barge did not threaten to do any act that it had no legal right to do, ABB was not forced to sign the indemnity agreement against its free will, and any economic pressure arose from ABB's agreement with a third party. We hold that the trial court did not err in finding that essential elements of duress were absent as a matter of law. Appellant's third issue is overruled.

We affirm the trial court's order granting appellee's motions for summary judgment.