

# NUMBER 13-15-00278-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **OPHTHALMIC CONSULTANTS OF TEXAS, P.A.,** | **Appellant,** |
| **v.** | |
| **ADOLFO MORALES,** | **Appellee.** |

### On appeal from the 444th District Court of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Perkes**
**Memorandum Opinion by Justice Rodriguez**

Appellant Ophthalmic Consultants of Texas, P.A. (OCT) filed this interlocutory appeal challenging the denial of its motion to compel arbitration pursuant to section 51.016 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West, Westlaw through 2015 R.S.). By four issues, which we address as one, OCT contends that the trial court erred in denying its motion to compel

arbitration because it established the existence of a valid arbitration agreement and appellee Adolfo Morales, M.D.'s claims fall within the scope of that agreement. We agree with OCT and we reverse and remand.

## I.    BACKGROUND

OCT hired Dr. Morales as an ophthalmology specialist in 2009. In conjunction with his hire, Dr. Morales signed an "Agreement to Arbitrate" that purported to require both Dr. Morales and OCT to submit employment claims, including claims for "wrongful discharge under statutory law and common law," "employment discrimination based on federal, state, or local statute, ordinance, or governmental regulations," and "retaliatory discharge" to binding arbitration. The arbitration agreement consists of a three-page stand-alone agreement and does not incorporate or reference any other document, contract, or agreement between the parties.

The agreement provides the following statement in bolded and underlined text:

**Both I and the Company understand that, by agreeing to arbitration, we are agreeing to substitute one legitimate dispute resolution forum (arbitration) for another (litigation), and thereby are waiving the right to have disputes resolved in court. This substitution involves no surrender, by me or the Company, of any statutory or common law benefit, protection, or defense.**

The agreement further stipulates that arbitration will be conducted before the American Arbitration Association (AAA), in the city where Dr. Morales was employed by OCT, in accordance with the Employment Dispute Resolution Rules (EDR Rules), and pursuant to Federal Rules of Civil Procedure. The agreement provides that OCT will bear all costs and expenses of arbitration, except that if Dr. Morales institutes arbitration, he is responsible for paying no more than one hundred dollars towards any AAA administrative

2

fees.[1]   The agreement does not give OTC the ability to modify, change, or terminate any provision of the agreement.

Dr. Morales' employment with OTC ended after OCT refused to renew his employment contract.   Dr. Morales initiated administrative proceedings with the Texas Workforce Commission Division of Civil Rights where he alleged that OCT engaged in discriminatory practices—namely that OCT terminated Dr. Morales' employment as a result of age discrimination.   After exhausting his administrative remedies, Dr. Morales filed suit in district court.   OCT answered Dr. Morales' lawsuit and asserted that the suit should be stayed pending arbitration.   Fifteen days after filing its original answer, OTC filed a motion to compel arbitration which the trial court denied.   This interlocutory appeal followed.

## II.   STANDARD OF REVIEW

We review the trial court's arbitration ruling for an abuse of discretion.   *See In re 24R, Inc.,* 324 S.W.3d 564, 568 (Tex. 2010) (orig. proceeding).   Under that standard, "we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo."   *In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).   Whether an arbitration clause imposes a duty to arbitrate is a question of law we review de novo.   *Id.*

## III.   ENFORCEABILITY OF ARBITRATION AGREEMENT

On appeal OCT contends that the trial court abused its discretion when it denied OCT's motion to compel arbitration.   Specifically, OCT argues that the agreement is valid

---

[1] The agreement further provides that the requirement to pay up to one hundred dollars would be waived upon a showing of financial hardship.

and enforceable and that it did not waive its right to enforce the arbitration agreement.

Arbitration involves matters of contract, and a party cannot be compelled to submit to arbitrate a dispute absent an agreement to do so. *See Ascendant Anesthesia PLLC v. Abazi,* 348 S.W.3d 454, 458 (Tex. App.—Dallas 2011, no pet.). A party seeking to compel arbitration pursuant to the Federal Arbitration Act (FAA) must establish that: (1) there is a valid arbitration agreement; and (2) the claims raised fall within the agreement's scope. *See In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex. 2005). Pursuant to Texas law, we apply traditional contract principles to determine the validity of an arbitration agreement. *See J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003).

There is a strong presumption favoring arbitration. *See id.* That presumption, however, arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *See id.* Thus, in order to obtain the benefit of the presumption, an employer attempting to enforce an arbitration agreement must show that the agreement meets all requisite contract elements.[2] *See id.* at 228. Once the party seeking to enforce arbitration establishes the existence of a valid arbitration agreement, disputes about the scope of an arbitration agreement are resolved in favor of arbitration.[3] *In re Kellogg Brown & Root,* 166 S.W.3d at 737; *Roe v. Ladymon,* 318 S.W.3d 502, 510–11 (Tex. App.—Dallas 2010, no pet.).

---

[2] Under Texas law a valid agreement to arbitrate is enforceable unless grounds exist at law or in equity for revocation of the agreement. *See In re Poly-America, L.P.,* 262 S.W.3d 337, 348 (Tex. 2008). "The burden of proving such a ground—such as fraud, unconscionability or voidness under public policy—falls on the party opposing the contract." *Id.*

[3] Dr. Morales does not dispute that his employment discrimination claim is within the scope of the purported arbitration agreement.

### A. Validity of Arbitration Agreement

We begin our analysis by determining whether OCT has established the existence of an arbitration agreement with Dr. Morales. *See In re Kellogg Brown & Root,* 166 S.W.3d at 737. The following elements are required for the formation of a valid and binding contract in Texas: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287, 291 (Tex. App.—Corpus Christi 2003, pet. denied). Consideration is also a fundamental element of every valid contract. *See id.* In the context of a bilateral arbitration agreement, consideration may consist of mutual promises to submit disputes to arbitration if the promises create a mutuality of obligation between the parties. *See J.M. Davidson,* 128 S.W.3d at 228. However, "when illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation and, thus, there is no contract." *See In re C&H News,* 133 S.W.3d 642, 647 (Tex. App.—Corpus Christi 2003, no pet.). A promise is illusory when it fails to bind the promisor, who then retains the option of discontinuing performance. *Id.*

In this case, it is undisputed that there was an offer, acceptance, consent, and execution and delivery of the contract. *See ABB Kraftwerke Aktiengesellschaft,* 115 S.W.3d at 291. Before the trial court, Dr. Morales' challenged the validity of the agreement answering that the illusory nature of the agreement negates a finding of consideration and there was no meeting of the minds because the contract terms were

5

indefinite. Dr. Morales additionally challenged the validity of the contract as a whole by asserting that it was substantively unconscionable.

### 1. Is the Agreement Illusory?

In response to OCT's argument that the agreement is valid, Dr. Morales argues that the arbitration agreement is illusory because OCT "under its program could supersede, modify, eliminate, revise, supplement, rescind, amend and/or even outright cancel any policy or provision contained in the [a]rbitration [a]greement at any time and in its sole and exclusive discretion. . . ." However, Dr. Morales points to no language in the contract authorizing OCT to modify or change the terms of the agreement and we find none. Because we determine that the bilateral arbitration agreement is supported by consideration in the form of reciprocal binding promises to submit claims to arbitration, we agree with OCT and conclude that the agreement is not illusory.[4]

### 2. Does the Agreement Fail for Indefiniteness?

OCT contends that the terms of the agreement are explicit and are not subject to later modification by either party. In response, Dr. Morales argues that the agreement is invalid because the terms of the agreement are too indefinite to create a contract as it omits essential terms. To be valid, the arbitration agreement must sufficiently set forth the extent of the obligations undertaken by the parties. *See T.O. Stanley Bood Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex. 1992); *ABB Kraftwerke Aktiengesellschaft,*

---

[4] OCT also argues that the enforceability of the agreement should be determined by an arbitrator because Dr. Morales challenged the agreement as a whole. Because the three-page agreement only pertains to the parties' agreement to arbitrate, the trial court must look to the whole document to determine that there is a valid agreement to arbitrate. *See Buckeye Check Cashing Inc. v. Cardegna,* 546 U.S. 440, 449 (2006) (noting that under the FAA, when the challenge is to the arbitration agreement itself, the validity of the arbitration agreement should be determined by the court). Any challenge to the enforceability of the provision is properly determined by the arbitrator. *See id.*

115 S.W.3d at 291.

However, the agreement clearly identifies the following essential terms: (1) the authority authorized to conduct the arbitration (AAA); (2) the rules for selecting that authority (EDR Rules if no arbitrator is agreed to by the parties within thirty days); (3) the procedure and rules applicable to the arbitration (the Federal Rules of Civil Procedure); (4) whether the proceedings will be "of record" (the AAA provides that a stenographic record can be made of an arbitration hearing); and (5) the party responsible for payment (OCT is responsible for all expenses of the arbitration, less the initial one hundred dollars to be paid by Dr. Morales toward administrative fees). The agreement is sufficiently definite because the essential terms are identified such that the agreement defines the nature and extent of the obligations to be undertaken by the parties. *See id.*

### 3. Is the Agreement Substantively Unconscionable?

Additionally, in response to OCT's contention that the arbitration agreement is valid, Dr. Morales asserts the agreement is "so grossly one-sided" as to be unconscionable. Specifically, Dr. Morales argues that the agreement is substantively unconscionable because it (1) requires Dr. Morales to pay his own attorneys' fees, and (2) is silent as to future modification by OCT.

The basic test for unconscionability is whether, "considering the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 757 (Tex. 2001) (orig. proceeding). Dr. Morales argued that the arbitration agreement is

7

substantively unconscionable because it "requires [Dr. Morales] to pay his own attorney[s'] fees." Under "the American Rule," parties pay their own attorneys' fees unless otherwise authorized by statute or contract. *Tony Gully Motors I. L.P. v. Chapa,* 212 S.W.3d 299, 310–11 (Tex. 2006) ("For more than a century, Texas law has not allowed recovery of attorney's fees unless authorized by statute or contract. This rule is so venerable and ubiquitous in American courts it is known as 'the American Rule.'"). Because there is no statutory or contractual provision stating otherwise, Dr. Morales is required to pay his own attorneys' fees whether he proceeds before a court or an arbitrator. *See id.* We agree with OCT that the agreement is not unconscionable.

We determine that OCT bore its burden of proof and established the existence of a valid arbitration agreement between the parties. *See In re Kellogg Brown & Root,* 166 S.W.3d at 737; *ABB Kraftwerke Aktiengesellschaft,* 115 S.W.3d 287 at 291. It established that there was: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *See ABB Kraftwerke Aktiengesellschaft,* 115 S.W.3d at 291. We did not find Dr. Morales' arguments to the contrary persuasive.

## B. Waiver of Arbitration

OTC contends on appeal that it did not waive its right to compel arbitration. Dr. Morales responds by asserting that OCT waived its right to compel arbitration because of the length of time between the date Dr. Morales filed his administrative action and the date OCT filed its motion to compel arbitration.

Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Jernigan v. Langley,* 111 S.W.3d 153, 156 (Tex. 2003). There is a strong presumption against the waiver of arbitration rights, and any doubts regarding waiver are resolved in favor of arbitration. *In re Bruce Terminix Co.,* 988 S.W.2d 702, 704–05 (Tex. 1998) (orig. proceeding); *Interconex, Inc. v. Ugarov,* 224 S.W.3d 523, 533 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Whether waiver occurs "depends on the individual facts and circumstances of each case." *Interconex,* 224 S.W.3d at 533. Waiver can be express or implied. *Id.*

A party may waive its right to arbitrate by expressly evidencing that it wishes to resolve the case in a judicial forum. *Id.* A party can also waive its right to arbitrate if it takes an action inconsistent with its right to arbitrate to the opposing party's prejudice. *Id.* "Thus, waiver will be found only when (1) the party seeking arbitration has substantially invoked the judicial process and (2) the party opposing arbitration suffers actual prejudice as a result." *Id.* at 533–34. An attempt to resolve the merits of a suit outside of arbitration and still retain the right to arbitration is clearly impermissible. *Id.* at 534. A party substantially invokes the judicial process when it takes "specific and deliberate actions, after the suit's filing, that are inconsistent with the right to arbitrate." *Id.* Examples of substantially invoking the judicial process include moving for summary judgment or seeking a final resolution of the dispute. *Id.*

It is undisputed that during the pendency of this case, other than its motion to compel arbitration, OCT only filed an answer that included a demand for arbitration. It is further undisputed that the case remained effectively stayed pending the trial court's ruling

9

on OCT's motion to compel arbitration. Therefore, OCT did not substantially invoke the judicial process and did not take any action inconsistent with its intention to compel arbitration. *See id.* at 533–34. We determine that OCT did not waive its right to enforce the arbitration agreement. *See Jernigan,* 111 S.W.3d at 156; *In re Bruce Terminix Co.,* 988 S.W.2d at 704–05; *Interconex,* 224 S.W.3d at 533. We sustain OCT's fourth issue.

### C. Summary

OCT has established the existence of a valid arbitration agreement. *See In re Kellogg Brown & Root,* 166 S.W.3d at 737. It is undisputed that Dr. Morales' employment discrimination claim falls within the scope of the parties' agreement to arbitrate. *See id.* Moreover, OCT did not waive its right to enforce the arbitration agreement between the parties. *See Jernigan,* 111 S.W.3d at 156; *In re Bruce Terminix Co.,* 988 S.W.2d at 704–05; *Interconex,* 224 S.W.3d at 533. The trial court therefore abused its discretion when it denied OCT's motion to compel arbitration. *See In re Kellogg Brown & Root,* 166 S.W.3d at 737. We sustain OCT's issue on appeal.

### III. CONCLUSION

We reverse the order of the trial court and remand for the entry of an order staying proceedings in the trial court and compelling the parties to arbitration.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
15th day of October, 2015.

10