# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-22-00155-CV

**Jonathan Thompson, P.E., and Atlas Design Services, PLLC, Appellants**

**v.**

**Thompson-Hamilton Engineering Services, LLC D/B/A Atlas Design Services and Sharon Hamilton, P.E., Appellees**

### FROM THE 274TH DISTRICT COURT OF HAYS COUNTY
### NO. 20-2211, THE HONORABLE SHERRI TIBBE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw our previous opinion and judgment issued on October 12, 2023, and substitute the following opinion and judgment in their place. We deny the motion for rehearing filed by appellants.

Appellants Jonathan Thompson, P.E., and Atlas Design Services, PLLC (collectively, Thompson) appeal from the trial court's denial of Thompson's motion to compel arbitration. In the underlying suit, appellees Thompson-Hamilton Engineering Services, LLC d/b/a Atlas Design Services (Thompson-Hamilton) and Sharon Hamilton, P.E. (collectively, Hamilton) sued Thompson for damages and injunctive relief, asserting that Thompson unlawfully diverted assets from Thompson-Hamilton, a business co-owned by Jonathan Thompson and Sharon Hamilton. After Hamilton filed a motion for contempt, seeking to enforce the parties'

agreed temporary injunction, Thompson moved to compel arbitration based on a provision in an unsigned mediated settlement agreement. For the reasons explained below, we affirm the denial of the motion to compel arbitration.

**BACKGROUND**

Jonathan Thompson and Sharon Hamilton have co-owned Thompson-Hamilton Engineering Services, LLC d/b/a Atlas Design Services since 2007. Hamilton alleges in the live petition in the underlying suit that Jonathan Thompson started Atlas Design Services, PLLC, a competing business, for his own pecuniary gain. Hamilton further alleges that Jonathan shifted existing and prospective business from Thompson-Hamilton to his competing business by hiding the true identity of the competing business from Thompson-Hamilton's existing and prospective customers through his unlawful use of Thompson-Hamilton's assumed name, trade dress, and reputation in the local engineering community. In addition, Hamilton alleges that Thompson unlawfully appropriated Thompson-Hamilton's confidential information.

Hamilton sued Thompson in October 2020, seeking damages and declaratory and injunctive relief, and asserting claims for (1) breach of contract, (2) breach of fiduciary duty, (3) misappropriation of confidential and proprietary information, (4) tortious interference with existing and prospective contracts, (5) unfair competition, (6) deceptive advertising and use of assumed name, (7) misappropriation of brand and trade-dress infringement and (8) fraud. In November 2020, the trial court signed an agreed temporary injunction.

After the parties attended mediation in February 2021, the mediator circulated a draft mediated settlement agreement (Agreement) to the parties. That Agreement contained a provision establishing that "[a]ny further disputes between the parties will be submitted to binding

arbitration before [the mediator]." The Agreement was never signed by the parties or filed with the trial court.

Neither party's counsel signed the Agreement. When the mediator circulated the agreement by email to the parties' attorneys, requesting that they "[s]ee attached and please confirm by reply to all," Hamilton's former counsel replied "[a]greed to substance and form" in a one-line email. Nothing in the record indicates that Thompson's counsel ever replied.

The next month, Hamilton filed an amended petition seeking, in addition to the other claims, a declaration that the parties' Agreement "is void, unenforceable, and therefore rescinded as a result of Defendant [Jonathan] Thompson fraudulently inducing [Hamilton] to enter into the [Agreement] with no intent of complying by its terms—either in whole or in part." Hamilton alleged that Jonathan Thompson "made false representations of material fact and created the false and misleading impression that he was acting in good faith in order to end the lawsuit" and that the evidence would show that Jonathan "surreptitiously plotted his ruse with the specific intent of harming [Hamilton] for [Thompson's] own financial benefit."

In January 2022, Hamilton filed a motion for contempt, seeking to enforce the agreed temporary injunction, arguing that the Agreement never became effective and the agreed temporary injunction remained in effect.[1] In February 2022, Thompson moved to compel arbitration under the Texas Arbitration Act, asserting that the Agreement was valid and enforceable and required the trial court to send the matter to arbitration. *See* Tex. Civ. Prac. & Rem. Code

---

[1] Hamilton retained new counsel in summer 2021. Hamilton's new counsel sent a ten-page letter to Thompson's counsel on October 15, 2021, seeking to "finalize the settlement of this case prior to end of the calendar year" and addressing various issues to be resolved by the parties surrounding settlement to accomplish that goal. According to the letter, each party at that point was taking the position that the other party had first breached terms of the Agreement. However, no party has asserted to the trial court that the other party has breached the Agreement.

§§ 171.021-.026, .096(d).  After conducting a hearing on both motions, without making findings of fact or conclusions of law, the trial court granted Hamilton's motion for contempt and denied Thompson's motion to compel arbitration.[2]  This interlocutory appeal followed.  *See id.* § 171.098(a)(1).

## ANALYSIS

In two issues, Thompson challenges the trial court's denial of the motion to compel arbitration.[3]  First, Thompson asserts that the trial court erred by denying the motion because a valid and enforceable agreement to arbitrate existed.  Second, Thompson contends that the trial court erred by denying the motion because Hamilton failed to establish the asserted defense of waiver of arbitration.  We turn first to the issue of whether an enforceable agreement to arbitrate existed because it is potentially dispositive.

### Standard of Review

"Arbitration is a creature of contract between consenting parties."  *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 629 (Tex. 2018).  "[A] party seeking to compel arbitration must establish the existence of a valid arbitration agreement and the existence of a

---

[2]  According to Hamilton's brief, Sharon Hamilton appeared at the hearing and testified as a live witness; Jonathan Thompson did not.  Thompson failed to make arrangements to pay for the reporter's record and to ensure the proper filing of the reporter's record.  However, because we resolve this interlocutory appeal as a matter of law, and not based on any implied fact finding by the trial court, we need not determine the effect of Thompson's failure to provide a record of what appears to be an evidentiary hearing.

[3]  In a third issue, Thompson asserts that if we determine that a valid agreement to arbitrate exists between the parties, we should grant mandamus relief from the trial court's order holding Thompson in contempt for violations of the agreed temporary injunction.  Because we conclude that no valid agreement to arbitrate exists, we overrule this issue.

4

dispute within the scope of the agreement." *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013). "Whether parties have agreed to arbitrate is a gateway matter ordinarily committed to the trial court and controlled by state law governing 'the validity, revocability, and enforceability of contracts generally.'" *Jody James Farms*, 547 S.W.3d at 631 (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)).

Thompson moved to compel arbitration under the Texas Arbitration Act, which establishes that a "written agreement to arbitrate" is enforceable if the agreement is to arbitrate either an existing controversy or one that "arises between the parties after the date of the agreement." Tex. Civ. Prac. & Rem. Code § 171.001(a). We review a trial court's denial of a motion to compel arbitration for abuse of discretion, deferring to the trial court's factual determinations if supported by the evidence, and reviewing the court's legal determinations de novo. *Dargahi v. Handa*, No. 03-17-00386-CV, 2017 WL 5247517, at *2 (Tex. App.—Austin Nov. 8, 2017, no pet.) (mem. op.); *SEB, Inc. v. Campbell*, No. 03–10–00375–CV, 2011 WL 749292, at *2 (Tex. App.—Austin Mar. 2, 2011, no pet.) (mem. op.) (noting courts apply same standard of review whether appeal is brought under Texas Arbitration Act or Federal Arbitration Act).

When one party resists arbitration, the trial court must determine whether a valid agreement to arbitrate exists, which is a question of law subject to de novo review. *Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 585-86 (Tex. 2022) (per curiam) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)); *see also Oak Crest Manor Nursing Home, LLC v. Barba*, No. 03-16-00514-CV, 2016 WL 7046844, at *2 (Tex. App.—Austin Dec. 1, 2016, no pet.) (mem. op.) ("Whether the parties agreed to be bound to an arbitration agreement is a contract-formation question that we review de novo, deferring to the trial court's findings of historical fact as between the parties so long as those determinations are supported by evidence.").

5

To challenge an arbitration clause, a party can contest (1) the validity of the contract as a whole, (2) the validity of the arbitration provision specifically, and (3) whether an agreement exists at all. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 124 (Tex. 2018) (citing *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 187 (Tex. 2009)). Challenges of the third type—that the contract never came into existence—are decided by the court. *RSL Funding*, 569 S.W.3d at 124; *see also* Tex. Civ. Prac. & Rem. Code § 171.021(b) ("If a party opposing an application [to arbitrate under an agreement to arbitrate] denies the existence of the agreement, the court shall summarily determine that issue."). In opposition to the motion to compel arbitration, Hamilton raised this third type of challenge.

**Did the parties have a valid and enforceable agreement?**

Thompson argues that the Agreement and the arbitration provision contained within it are valid and enforceable because Hamilton's signature, as a matter of law, was not a condition precedent to being bound by the terms of the Agreement. Thompson asserts that the Agreement's plain text did not require a signature as a condition precedent. Thompson further contends that the evidence before the trial court of the parties' conduct conclusively demonstrates that the parties had agreed to the terms of the Agreement, even though they did not sign the document. In response, Hamilton asserts that the Agreement is unenforceable because (1) it does not satisfy Rule 11's minimum requirements for settlement agreements, (2) the Agreement contemplates that the parties' signatures are required to take effect, and (3) Thompson's conduct demonstrates lack of intent to be bound by the unsigned Agreement.

We interpret arbitration agreements under traditional contract principles. *J.M. Davidson, Inc.*, 128 S.W.3d at 228. To prove the existence of a valid contract, a party "must

6

establish that (1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018). "Contracts require mutual assent to be enforceable. Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam) (citations omitted); *cf. Phillips v. Carlton Energy Group, LLC*, 475 S.W.3d 265, 277 (Tex. 2015) (explaining that "while signature and delivery are often evidence of the mutual assent required for a contract, they are not essential . . . 'unless the parties explicitly require signatures as a condition of mutual assent'" (footnote omitted)).

The central question here is whether the parties executed and delivered the contract with the intent that it be mutual and binding. In response to Thompson's motion to compel arbitration, Hamilton asserted that the Agreement never became effective because it was never signed by either party. Hamilton further alleged that the parties were still negotiating significant details about the final settlement terms, and thus, the Agreement "was for all intents and purposes, an 'agreement to agree'" that is unenforceable because neither party ever signed it or filed it or the post-mediation email with the trial court as a Rule 11 agreement. Thompson contends on appeal that the absence of the parties' signatures on the Agreement is not dispositive of the question of whether they intended to be bound, relying on cases holding that "[a] party may accept a contract, and indicate its intent to be bound to the terms by acts and conduct in accordance with the terms." *E.g.*, *Thomas J. Sibley, P.C. v. Brentwood Inv. Dev. Co., L.P.*, 356 S.W.3d 659, 663 (Tex. App.—El Paso 2011, pet. denied) (citing *Augusta Dev. Co. v. Fish Oil Well Servicing Co.*, 761 S.W.2d 538,

544 (Tex. App.—Corpus Christi–Edinburg 1988, no writ) ("However, in order to constitute a contract in writing, a writing does not necessarily have to be signed by both parties, so long as the party not signing accepts the contract by his acts, conduct or acquiescence.")). In addition, Thompson relies on Section 171.001 of the Texas Arbitration Act, which requires only that an agreement to arbitrate be in writing but does not require the agreement to be signed to be enforceable, except in limited circumstances not present here. Tex. Civ. Prac. & Rem. Code § 171.001(a); *see also id.* § 171.002 (requiring signatures on arbitration agreements for acquisition contracts for property or services for less than $50,000 and agreements to arbitrate personal-injury claims).

However, as Thompson acknowledges, "when the terms of the contract make it clear that a signature is required, a party's failure to sign the agreement will render the agreement unenforceable." *St. David's Healthcare P'ship, LP v. Fuller*, 627 S.W.3d 707, 711 (Tex. App.—Austin 2021, pet. dism'd) (quoting *Wright v. Hernandez*, 469 S.W.3d 744, 758 (Tex. App.—El Paso 2015, no pet.) (citing *e.g.*, *Simmons & Simmons Constr. Co. v. Rea*, 286 S.W.2d 415, 418-19 (Tex. 1955) (concluding evidence did not support jury's verdict enforcing contract when one party had not signed contract, contract contained signature block, contract itself stated that parties' signatures had to be notarized, and contract was given to one party with directions to sign it and return to other party for signing))). Thompson argues that the plain language of the Agreement does not expressly require a signature because it acted only as memorialization of the agreement that the parties reached at the mediation and "[n]o portion of the text of the [Agreement] explicitly requires a signature for the agreement to be valid." We disagree.

When we construe a written contract, our primary concern "is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393

8

(Tex. 1983). To achieve this objective, we "examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Id.* Objective manifestations of the parties' intent control, and "[w]e therefore 'presume parties intend what the words of their contract say.'" *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 764 (Tex. 2018) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010)).

Several parts of the Agreement express an intent that the parties' signatures are required for it to become effective. The introductory paragraphs state as follows:

> Today the undersigned mediated with Patrick Keel. After consulting with their attorneys, *the parties and their attorneys now sign this document* to memorialize the terms of their agreement *under § 154.071 of the Texas Civil Practice & Remedies Code and Rule 11 of the Texas Rules of Civil Procedure.*
>
> Although the mediator assisted in drafting this agreement, the parties and their attorneys thoroughly reviewed the document and made or had the opportunity to make any changes to it that the parties desired. *The parties sign this agreement of their own free will and without duress*, relying on their own understanding of the agreement and the advice of their attorneys.

(Emphases added). The document concludes "Signed on February 12, 2021," followed by signature blocks for Thompson and Hamilton to sign in both their individual and representative capacities, as well as signature lines for each of their attorneys to approve the Agreement as to form.

By referring to Section 154.071 and Rule 11, both of which require the signing of a written agreement to establish an enforceable settlement agreement, the Agreement by its unambiguous terms requires the parties' signatures to make it enforceable. *See* Tex. Civ. Prac. & Rem. Code § 154.071(a) ("If the parties reach a settlement and execute a written agreement

9

disposing of the dispute, the agreement is enforceable in the same manner as any other written contract."); Tex. R. Civ. P. 11 ("Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."). The Texas Supreme Court has held that "compliance with Rule 11 is a general prerequisite for any judgment enforcing an agreement touching a pending suit." *Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex. 1984) (concluding that oral settlement agreement was unenforceable because it did not comply with Rule 11). In addition, the Agreement states in two separate places that the parties are signing "to memorialize the terms of their agreement" and based on their agreement to those terms after reviewing and having the opportunity to make changes. Finally, the signature blocks require them to sign individually and in their representative capacities and their attorneys to sign to indicate their approval of the form. Together, these references to the parties' signatures are far more than the mere signature block that our sister court concluded was insufficient standing alone to establish that a party's signature is a condition precedent to the enforceability of the parties' agreement. *See Wright*, 469 S.W.3d at 760 (citing *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.,* 718 F.3d 448, 454-55 (5th Cir. 2013)). We conclude that the Agreement unambiguously requires the parties' signatures to become effective, and the undisputed evidence establishes that the Agreement was not signed by the parties. Therefore, we hold that it is not enforceable.

Because of this unambiguous language, we are not persuaded by Thompson's argument that Hamilton's former counsel's email stating that he agreed to the substance and form of the Agreement is conduct indicative of Hamilton's intent to be bound by the Agreement's terms, including the arbitration provision. We note that the mediator's email requested that both

10

Hamilton's counsel and Thompson's counsel confirm that the attached agreement was the agreement reached at the mediation. Nothing in the record demonstrates that Thompson's counsel responded or that either Hamilton or Thompson ever signed the Agreement. The cases relied upon by Thompson involved contracts where at least one party signed the agreement and the courts determined that there was no evidence of an intent to require both parties' signatures as a condition precedent to the contract's becoming effective. *See, e.g.*, *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 292 (Tex. App.—Corpus Christi–Edinburg 2003, pet. denied). Because we have determined that the Agreement unambiguously required the parties' signatures to become enforceable, we conclude the trial court did not abuse its discretion by denying the motion to compel arbitration.[4]

---

[4] Because we conclude that the Agreement and the arbitration provision contained within it are not enforceable absent the necessary signatures, we need not address Thompson's argument that the parties' conduct after the mediation established their assent to be bound by the Agreement. *See* Tex. R. App. P. 47.1. However, on rehearing, Thompson urges that we should enforce what this Court has described as "the *Kennedy* court's equitable-exception dictum." *Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 299 (Tex. App.—Austin 2000, pet. denied) (citing *Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex. 1984) (holding that "compliance with Rule 11 is a general prerequisite for any judgment enforcing an agreement touching a pending suit" but also noting that "a nonconforming agreement may be enforced for . . . equitable reasons [of fraud or mistake]"). Thompson does not argue that the Agreement should be enforced on grounds of fraud or mistake— indeed, Thompson does not argue that any portion of the Agreement should be enforced other than the arbitration provision. Instead, Thompson argues that Hamilton "took advantage of the [Agreement] by enforcing its provisions to her benefit" and that she should not be able to denounce the Agreement because she does not dispute the existence of the Agreement or its terms. *See Anderson v. Cocheu*, 176 S.W.3d 685, 688-89 (Tex. App.—Dallas 2005, pet. denied) (noting exception to Rule 11's writing requirement when existence of agreement and its terms are not disputed); *Dehnert v. Dehnert*, 705 S.W.2d 849, 851 (Tex. App.—Beaumont 1986, no writ) (holding husband could not take advantage of unsigned settlement agreement in divorce case by receiving some property under agreement and then later denouncing agreement).

The record belies Thompson's contentions that Hamilton "enforced" the provisions of the Agreement to her benefit and that she does not dispute the Agreement's existence or terms. Thompson bases his contentions on assertions in Hamilton's counsel's letter of Hamilton's claims about the division of funds and projects. However, the letter itself demonstrates that some terms of the Agreement were in dispute and that Hamilton sought "to finalize the settlement." And as

11

**CONCLUSION**

Having concluded the trial court did not abuse its discretion by denying the motion to compel arbitration, we affirm the interlocutory order.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, and Theofanis

Affirmed

Filed: December 21, 2023

---

previously noted, Hamilton never attempted to enforce the Agreement in the trial court. On this record, we cannot conclude that the trial court abused its discretion by failing to apply the equitable exception to Rule 11's requirements.

Similarly, because we have held that the Agreement and the arbitration provision contained within it are not enforceable absent the necessary signatures, we do not reach Thompson's other issue presented in which he contends the trial court erred by denying the motion to compel arbitration because Hamilton had failed to establish the defense of waiver. *See* Tex. R. App. P. 47.1.

12